Charles GOODPASTER, Appellant,

v.

OKLAHOMA GAS & ELECTRIC COMPANY, Appellee.

John H. BURKE, Appellant,

v.

OKLAHOMA GAS & ELECTRIC COMPANY, Appellee.

Nos. 6693, 6705.

United States Court of Appeals
Tenth Circuit.

May 13, 1961.

Lewis G. Mosburg, Jr., of Fuller, Smith, Mosburg & Davis, Oklahoma City, Okl. (Daniel G. Gibbens, Oklahoma City, Okl., on the brief), for appellant Charles E. Goodpaster.

Daniel G. Gibbens, Oklahoma City, Okl. (H. L. Johnson, Jr., Oklahoma City, Okl.,

on the brief), for appellant John H Burke.

Streeter B. Flynn, of Rainey, Flynn & Welch, Oklahoma City, Okl. (Houston W. Reeves, Oklahoma City, Okl., on the brief), for appellee.

Before PICKETT, LEWIS and BREITENSTEIN, Circuit Judges.

PICKETT, Circuit Judge.

The plaintiff, Charles Goodpaster, brought this action to restrain Oklahoma Gas & Electric Company, herein referred to as "O. G. & E.", from erecting poles, for an electric transmission line, upon a utilities easement over lots in a residential development in The Village, Oklahoma. It was alleged that the plaintiff was the owner of certain lots in the Burke Northridge Manor Addition to the Town of The Village, in Oklahoma County, Oklahoma; that the amended restriction relating to the utility easement in the recorded plat of the addition provided that "no structure of any nature, specifically including electric power pole lines, shall be constructed which would exceed forty (40) feet in height above normal ground level"; and that O. G. & E. had entered upon the easement for the purpose of erecting electric power line poles approximately 100 feet in height, to the irreparable injury of the plaintiff. Upon the filing of the complaint, the trial court restrained the erection of the poles pending a hearing on the plaintiff's application for a preliminary injunction. On the day of the hearing, John H. Burke, who executed and filed the original plat, sought to intervene in the action, alleging that he was the owner of lots adjacent to those owned by Goodpaster, and that he would suffer the same irreparable injury if the power poles were erected. The trial court vacated the restraining order, denied a temporary injunction, and refused to permit Burke to intervene. Goodpaster and Burke have appealed, and the cases were consolidated for hearing.

The facts are not in dispute. On November 20, 1958, September 10, 1959, and July 20, 1960, John H. Burke filed in the office of the County Clerk of Oklahoma County plats covering various portions of a tract of land which he owned in the Town of The Village, Oklahoma County, Oklahoma.[1] Included in one of these plats were the lots now owned by Goodpaster. Each of the plats contained a dedication for utility easements, which read as follows:

"(14) Easements for public utility installation and maintenance are hereby created and established across the rear of certain lots and along the side of certain lots and as designated in other places, in accordance with designation 'Utility Easement' all as shown on the above mentioned recorded plat of Burke Northridge Manor, and no building shall be erected or placed upon said Utility Easements, and no material or refuse shall be placed or stored on said Drainage Easement, except that clean fill may be placed thereon, provided the water course is not altered or blocked by such fill."

In September, 1960 O. G. & E. commenced the construction of an electric line on the easement covering lots on the westerly side of one of the plats. Burke brought an action in the District Court of Oklahoma County, Oklahoma, in which he sought to enjoin the construction of the line, contending that the erection of the contemplated power line would constitute trespass upon his property. The injunction was denied. Thereafter Burke asked the governing body of The Village to enact an ordinance limiting the height of all poles in The Village to 40 feet, or less, but this request was refused. Shortly thereafter, without obtaining the approval of the town, or any of its agents, Burke recorded in the office of the County Clerk of Oklahoma County, Oklahoma, an instru-

---

1. These plats were executed as required by town ordinances and were approved by the Town Planning Commission. They were then accepted by the Board of Trustees of the town.

ment purporting to amend the dedicated utility easement upon which the electric power line was to be constructed by limiting the height of utility poles to 40 feet. On March 17, 1961 Burke was advised that O. G. & E. would, on March 20, 1961, commence work for the completion of the electric line. This action followed immediately.

■■ It is well settled that an application for a temporary injunction, in advance of a hearing on the merits of the case, is addressed to the sound judicial discretion of the district court. 7 Moore's Federal Practice, p. 1630 (2d Ed., 1955), and cases cited.[2] We find no abuse of the trial court's discretion in denying the temporary injunction after a hearing. The court had before it the state court proceedings in which injunctive relief was denied to Burke,[3] when he was the owner of the same land, and the refusal of the city authorities to adopt an ordinance restricting the height of the power poles. Furthermore, the validity of the purported amendment to the original easement dedication which was filed without obtaining approval of the town's governing authorities, is doubtful.

■■ Burke sought to intervene because he had a cause of action against O. G. & E. involving other property, which presented questions of law and fact the same as those presented by Goodpaster's action. We do not consider the question of whether the granting of the motion to intervene would destroy diversity of citizenship as a requisite to Federal Court jurisdiction. Permissive intervention under Rule 24(b), Fed.Rules Civ.Proc. 28 U.S.C.A. is discretionary, and we find no abuse of discretion. Archer v. United States, 10 Cir., 268 F.2d 687.

Affirmed.

---

2. In Yakus v. United States, 321 U.S. 414, 440–441, 64 S.Ct. 660, 674, 88 L.Ed. 834, the Court said:

"The award of an interlocutory injunction by courts of equity has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff. Compare Scripps-Howard Radio v. Federal Communications Comm'n, 316 U.S. 4, 10 [62 S.Ct. 875, 86 L.Ed. 1229], and cases cited. Even in suits in which only private interests are involved the award is a matter of sound judicial discretion, in the exercise of which the court balances the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction. Meccano, Ltd. v. John Wanamaker, 253 U.S. 136, 141 [40 S.Ct. 463, 465, 64 L.Ed. 822]; Rice & Adams Corp. v. Lathrop, 278 U. S. 509, 514 [49 S.Ct. 220, 73 L.Ed. 480]. And it will avoid such inconvenience and injury so far as may be, by attaching conditions to the award, such as the requirement of an injunction bond conditioned upon payment of any damage caused by the injunction if the plaintiff's contentions are not sustained. Prendergast v. New York Telephone Co., 262 U. S. 43, 51; [43 S.Ct. 466, 67 L.Ed. 853]; Ohio Oil Co. v. Conway, 279 U.S. 813, 815 [49 S.Ct. 256, 257, 73 L.Ed. 972].

"But where an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff. Virginian Ry. Co. v. United States, 272 U.S. 658, 672–3 [47 S.Ct. 222, 71 L.Ed. 463]; Petroleum Exploration Co. v. Public Service Comm., 304 U.S. 209, 222–3 [58 S.Ct. 834, 82 L.Ed. 1294]; Dryfoos v. Edwards, [D.C.] 284 F. 596, 603, affirmed, 251 U.S. 146 [40 S.Ct. 106, 64 L.Ed. 194]; see Beaumont, S. L. & W. Ry. Co. v. United States, 282 U.S. 74, 91, 92 [51 S.Ct. 1, 8, 75 L.Ed. 221]. Compare [State of] Wisconsin v. [State of] Illinois, 278 U.S. 367, 418–21 [49 S.Ct. 163, 73 L.Ed. 426].˙ This is but another application of the principle, declared in Virginian Ry. Co. v. System Federation [No. 40], 300 U.S. 515, 552 [57 S.Ct. 592, 601, 81 L. Ed. 789], that 'Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.'" (Footnote omitted.)

3. This action appears to be an attempt to relitigate, in Federal Court, the same issues presented to the state court by Burke.