Zebediah SIMS, a minor, on behalf of himself and all other persons similarly situated, through his parents and general guardians Charlie Sims and Helen Sims, Plaintiffs,

v.

BOARD OF EDUCATION OF the INDEPENDENT SCHOOL DISTRICT NO. 22 et al., Defendants.

Civ. No. 8756.

United States District Court, D. New Mexico.

July 1, 1971.

**680**

Donald Juneau and John Whitehouse Cobb, Shiprock, N. M., and Willard F. Kitts, Albuquerque, N. M., for plaintiffs.

White & Caton, Farmington, N. M., for defendants.

## MEMORANDUM OPINION

EUBANKS, District Judge.

Plaintiff Sims brings this action individually and as a class action for declaratory injunctive relief against the policy and practice of corporal punishment in the schools of Independent School District 22 in the County of San Juan, State of New Mexico, predicating jurisdiction therefor on 28 U.S.C. §§ 1343, 2201 and 2202; 42 U.S.C. §§ 1981, 1983 and 1988. The defendants are the governing board of the District, the individual members of the Board and the superintendent of the said District.

The complaint contains the usual averments of a class action. Sims alleges that his claims are typical of the claims of the class to which common questions of fact and law are applicable and that he will adequately protect the members of the class. Likewise he alleges that the defendants represent a class of governing school boards and administrators throughout the State of New Mexico so numerous that joinder is impracticable and that claims and defenses of fact and law are common to the class and that the named defendants will fairly and adequately protect the interest and claims of their class.

The complaint alleges that the defendant Board has approved the use of corporal punishment of students by the faculty. The policy of said Board, set out in Teachers' Handbook, Independent School District No. 22, page 22, is as follows:

> The most advanced educational theory opposes corporal punishment in the school. By and large, the administration of our schools supports this theory. However, it must be recognized that situations arise which can be considered exceptions to the rule. When other means have repeatedly failed, it may be necessary for the school authorities to administer a "spanking" to some recalcitrant pupil. When this is necessary, the punishment shall be administered by the school principal or if administered by the teacher it should be witnessed by the principal or his delegated representative in his absence.

The complaint alleges that "each and every student is subjected to this mode of punishment"; and "no more than five strokes are given at any one session of paddling"; and that other Boards of Education in the State of New Mexico have adopted policies substantially identical to the policy of the defendant District. It alleges that on December 4, 1970, plaintiff Sims had in his possession a template which had been taken from a crafts class in violation of District school rules for which defendant crafts teacher inflicted three blows on Sims' posterior, with the principal of the school as a witness. Thereafter the complaint alleges that the infliction of corporal punishment on December 4, 1970,

> was not the first time plaintiff was corporally punished by agents and employees of defendants. There is a probable likelihood that corporal punishment by defendants' agents and employees will again be inflicted upon plaintiff or other members of his class. Nor was the above-related incident different or singular in respect to the mode or procedure of inflicting corporal punishment upon plaintiff or other members of his class.

The complaint alleges that "corporal punishment serves no legitimate educational purpose" and "tends to inhibit learning, retard social growth and force

acceptance of an inferior class position upon the plaintiff and other similarly situated members of his class"; "subjects him to further humiliation because of the public or semi-public character of the act as it is practiced"; and that "the psychological harm done plaintiff and other members of class by the infliction of corporal punishment is substantial and lasting."

As a first cause of action, the complaint alleges violation of "the rights of plaintiff and his class guaranteed under the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the Constitution of the United States" in that (a) corporal punishment constitutes summary punishment without affording an opportunity for notice, hearing, or right of representation; (b) corporal punishment is arbitrary and capricious, and unrelated to the achieving of any legitimate educational purpose; (c) corporal punishment causes substantial and lasting psychological harm which is out of proportion to the gravity of the offense the student is alleged to have committed." As a second cause of action the complaint alleges that corporal punishment "constitutes cruel and unusual punishment" in violation of the Eighth Amendment, the Due Process Clause of the Fourteenth Amendment, and 42 U.S.C. §§ 1981 and 1983. As a third cause of action the complaint alleges that corporal punishment "abridges the privileges and immunities of the [class] to physical integrity, freedom from intentional imposition of emotional distress, dignity of personality and freedom from arbitrary authority" in violation of the Privileges and Immunities Clause of the Fourteenth Amendment and 42 U.S.C. §§ 1981 and 1983. A fourth cause of action alleges that corporal punishment "is violative of the rights of plaintiff and his class to freedom of speech and due process of law" in that "(a) the policy statement is vague and overbroad in its wording; (b) the policy statement's uncertainty of meaning has a chilling effect upon the free exercise of expression by plaintiff and

his class" in violation of the First Amendment and made applicable to the states by the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. §§ 1981 and 1983. Tinker v. Des Moines School District (1969), 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731.

The prayer is for equitable relief only. The complaint alleges that no remedy at law is available and the relief sought is (1) a declaratory judgment holding that the statewide custom and practice of corporal punishment "is a denial of due process of law and equal protection of the laws, abridges the privileges and immunities of students, and constitutes a cruel and unusual punishment", (2) both a preliminary and a permanent injunction against defendants prohibiting them from administering corporal punishment upon the plaintiff or any other student within the defendant District, and (3) "a mandatory injunction against defendants to adopt and implement a new policy statement with respect to discipline of students, which shall contain guarantees of due process, and in setting forth an alternative mode of punishment for infractions, shall conform to the more accepted and progressive educational expertise on this question."

The defendants have moved to dismiss for failure to state a claim on which relief can be granted. One Harry Joe, a minor, through his parent and general guardian has moved for leave of court to file a complaint in intervention as a party plaintiff.

The complaint alleges a deprivation, under color of the laws of the State of New Mexico, of constitutional rights, privileges and immunities secured by the federal Constitution and Plaintiff Sims prays for equitable relief for himself and his class. This Court is vested with original jurisdiction of any civil action, authorized by law to be commenced by any person, "to redress the deprivation, under color of any State law * * * of any right, privilege or immunity secured by the Constitution of the United States." 28 U.S.C. § 1343. The Court "may declare the rights and other legal

relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. All persons within the jurisdiction of the United States "shall have the same right * * * to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens * * * " 42 U.S.C. § 1981. And "Every person who, under color of any statute, * * * regulation, custom, or usage, of any State, * * * subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

█ The Court turns first to the motion of Harry Joe to intervene. Permissive timely intervention is allowed under Rule 24 F.R.Civ.P. where the applicant's claim and the main action have a question of law or fact in common. But permissive intervention is allowed only at the sound judicial discretion of the Court. The Rule provides that in the exercise of such discretion "the court shall consider whether the intervention will unduly delay or prejudice· the adjudication of the rights of the original parties." Goodpaster v. Oklahoma Gas & Electric Co., CA 10 (1961), 291 F.2d 276.

The motion of Harry Joe to intervene should be denied. In the first place, there is no allegation that a new defendant named in the motion was acting under color of state law whereas the complaint alleges that all acts of all defendants complained of were done under color of state law. In the second place, the motion not only names a defendant not named in the complaint but as against said defendant, the intervenor plaintiff seeks damages for an alleged assault and battery whereas the plaintiffs seek only equitable relief—"the damages suffered by the plaintiff and his class are too speculative or conjectural to provide a basis for asking relief in an action at law," reads the complaint.

Allowance of the motion herein would unduly delay, if not prejudice, the adjudication of the rights of the original parties. In Stadin v. Union Electric Company, CA 8 (1962) 309 F. 2d 912, Judge [now Justice] Blackmun, in affirming a denial of intervention by the trial court, noted the problems attendant upon additional witnesses, interrogatories and depositions, extended pretrial activity, greater length of trial and elements of confusion, and said:

> These in themselves suggest delay and the clouding of the issues involved in the original causes of action. More than one trial court has observed that "Additional parties always take additional time" and that "they are the sources of additional questions, objections, briefs, arguments, motions and the like which tend to make the proceeding a Donny-Brook Fair."

In Augustus, etc. v. Board of Public Instructions, CA 5 (1969), 420 F.2d 778, the appellate court held that refusal by the trial court to allow intervention to a minor in a controversy between another minor and the county board of public instruction was not error. The Court here finds that the motion of Harry Joe for permissive intervention should be denied.

█ The plaintiffs allege a violation of their constitutional right of procedural due process of law guaranteed by the Fourteenth Amendment of the Constitution, in that the regulation "does not provide for a notice, hearing or the right of representation before corporal punishment is administered." The pertinent language of the Amendment is " * * * nor shall any State deprive any person of life, liberty, or property, without due process of law; * * * " The language is general in scope and protects persons irrespective of age. In re Poff, D.D.C. (1955), 135 F.Supp. 224, 225; Application of Johnson, D.C.N.J. (1947), 178 F.Supp. 155.

What constitutes procedural "due process" within the ambit of the Fourteenth Amendment cannot be defined precisely; rather, it must be determined in the light of that which is just and reasonable, considering all factors. The "due process" limitation does not unduly confine officials who have the responsibility of governing. In Hannah v. Larche (1960), 363 U.S. 420, at 442, 80 S.Ct. 1502, at 1514, 4 L.Ed.2d 1307, then Chief Justice Warren said:

"Due process" is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. * * * Therefore, as a generalization, it can be said that due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings. Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account.

The late Justice Frankfurter phrased it slightly differently in his concurring opinion in Joint Anti-Facist Refugee Committee v. McGrath (1951), 341 U.S. 123 at 163, 71 S.Ct. 624, at 644, 95 L.Ed. 817, when he said:

The precise nature of the interest that has been adversely affected, the manner in which this was done, the reasons for doing it, the available alternatives to the procedure that was followed, the protection implicit in the office of the functionary whose conduct is challenged, the balance of hurt complained of and good accomplished—these are some of the considerations that must enter into the judicial judgment.

This Court knows of no law which establishes the right of a school pupil to formal notice, hearing, or representation, before corporal punishment may be inflicted by school authorities. We find no reported case so holding and counsel have cited none. This Court takes judicial notice that the purposes to be served by corporal punishment would be long since passed if formal notice, hearing and representation were required. In Baker v. Downey, D.C.Calif. (1969), 307 F.Supp. 517, the Court said:

In the instant case, the school officials were charged with the conduct of the educational program and if the temporary suspension of a high school student could not be accomplished without first preparing specifications of charges, giving notice of hearing, and holding a hearing, or any combination of these procedures, the discipline and ordered conduct of the educational program and the moral atmosphere required by good education standards, would be difficult to maintain.

The holding of the Supreme Court of Tennessee in State ex rel. Sherman v. Hyman, 180 Tenn. 99, 171 S.W.2d 822, cert. denied 319 U.S. 748, 63 S.Ct. 1158, 87 L.Ed. 1703, is not to the contrary. It is to be distinguished on the facts. The question was whether a medical school student, charged with the sale of examination questions, could be suspended without a hearing. The Court found that there had been no denial of procedural due process. In holding that the right to study medicine was a qualified right the Court said:

One who claims a right cannot exercise it to the prejudice and injury of others and especially organized society. The due process clause of the Constitution * * * can have no application where the governing board of a school is rightfully exercising its inherent authority to discipline students. When acting rightfully it does not proceed to enforce any rule of conduct arbitrarily and summarily. * * * We find it to be the unanimous holding of the authorities that the courts will not interfere with the discretion of school officials in matters affecting discipline of students unless there is a manifest abuse of discretion or when their action has been arbitrary or unlawful.

The laws are filled with exceptions to the cautionary rule that one potentially affected by governmental action should be granted an opportunity to be heard prior to action being taken against him. Plaintiff Sims had notice of the regulation respecting infliction of corporal punishment. He has been so punished previously. It is not denied by Sims that he had overnight possession of the missing template although his version of its acquisition and retention and that of Principal Schmitt vary considerably. In Buttny v. Smiley, D.C.Colo. (1968), 281 F.Supp. 280, the Court said:

> Once the facts have been found by the disciplinary body and the guilt has been established, punishment is then a matter of judgment and discretion within the recognized limits. Our only inquiry here relating to the punishment imposed is: "Is the punishment meted out within accepted limits, and, if it is, did the authorities act arbitrarily or capriciously?"

■ Procedural due process does not require a trial-type hearing in every conceivable case of government impairment of private interest. The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation. Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.

The Court finds that the defendant authorities did not act arbitrarily nor capriciously and did not violate plaintiff Sims' right to procedural due process of law in inflicting corporal punishment upon him.

■ "Due process of law" has a substantive as well as a procedural aspect. Substantive due process is a guaranty against arbitrary legislation, demanding that the law be not unreasonable and that the means selected shall have a real and substantial relation to the object sought to be attained. The test is whether there be a matter touching the public interest which merits instant correction at the hands of the authorities and, if so, that the remedy adopted by the rule-making authorities be reasonably calculated to correct it.

> The line of division between the rational and the arbitrary in legislation is not to be drawn with an eye to remote possibilities. What the law looks for in establishing its standards is a probability or tendency of general validity. If this is attained, the formula will serve, although there are imperfections here and there. The due process of law clause does not impose an unobtainable standard of accuracy. A mere error in judgment on the part of the legislature as to measures best calculated to promote public safety is not enough to condemn a law as arbitrary. The fact that a rule of law may, in certain instances, work a hardship does not violate the due process clause of the Constitution, provided it operates without any discrimination and in like manner against all persons of a class.

16 Am.Jur.2d, Constitutional Law, § 550.

■■ The fact that a regulation may be harsh, unfair, inequitable, create hardships or inconvenience, or may be oppressive, severe or drastic, and of doubtful propriety, does not demonstrate its invalidity. The courts are not the guardians of the liberties of the people against oppressive legislation which does not violate constitutional provisions. The courts are not concerned with the expediency, necessity, wisdom, utility, and propriety of legislative enactments so long as constitutional principles are not violated.

There is a line of cases in the Supreme Court wherein legislative enactments were invalidated as violative of substantive due process under the Fifth and Fourteenth Amendments. There are cases in which the Supreme Court found that there was no matter touching the

public interest which merited correction at the hands of the legislative body or in which the Supreme Court found that the legislative remedy provided was not reasonably calculated to cure the ill, condition or abuse, or went beyond the necessities of the case. But that line of cases has not been followed in recent years. The Court, in Ferguson v. Skrupa (1963), 372 U.S. 726, at 730, 83 S.Ct. 1028, at 1031, 10 L.Ed.2d 93 said:

> We have returned to the original constitutional proposition that courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws. * * * It is now settled that States "have power to legislate against what are found to be injurious practices in their internal * * * affairs, so long as their laws do not run afoul of some specific federal constitutional prohibition, or of some valid federal law." * * * We refuse to sit as a "superlegislature to weigh the wisdom of legislation," * * *.

▮ The regulation here questioned does not go beyond that which is sometimes reasonably necessary or required and is reasonably calculated to serve the public interest by promoting decorum in the public schools through legitimate means. The complaint alleges a disagreement among educators as to the value of corporal punishment. There are those who agree that corporal punishment serves no educational purpose but this Court cannot say that the regulation of the defendant district lacks rationality or is not relevant to the legitimate functions of common school education today. Insofar as the complaint alleges a deprivation of substantive due process of law the Court finds that none exists here and holds that defendants did not do violence to due process by adopting and implementing the challenged regulation.

▮ We now turn to the alleged violation of the equal protection of the laws. The Fourteenth Amendment of the Federal Constitution provides in pertinent part that no state shall "deny to any person within its jurisdiction the equal protection of the laws." The limitation guarantees the equal application of the laws. It is a guaranty against a purposeful discrimination against one person in favor of another in a like case, with no rational basis for the differentiation. A law may be fair and equal on its face, yet if it be applied and administered by public authority with an unequal hand so as to make arbitrary discriminations between persons in similar circumstances, material to their rights, there is then denial of equal protection in the application of the law. Such action by state authorities is proscribed by the equal protection clause of the Fourteenth Amendment. The basic case is Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220.

There is no denial of equal application of the regulation devoid of any allegation that any pupil has been treated differently from others who disobey regulations established and enforced by the defendants. In truth, the complaint negates any discrimination in the enforcement regulation by the defendants. In Jackson v. Dorrier, CA 6 (1970), 424 F.2d 213, it was said:

> The record is absolutely devoid of any proof that the regulation's application in this case was the result of selective enforcement of the regulation against these students, so as to sustain the allegation that they have been denied the equal protection of the law.

▮ The equal protection clause also guarantees the application of equal laws. The plaintiff alleges that the infliction of corporal punishment forces "acceptance of an inferior class position upon plaintiffs and other similarly situated members of his class" and constitutes "an unreasonable and invidious discrimination", and "is not related to the achievement of any legitimate educational purpose and causes substantial and lasting psychological harm which is out of proportion to the gravity of the offense the student is alleged to have committed." In short, the allegation is that

corporal punishment in the public schools of the District and in the schools of New Mexico serves no useful educational purpose and thereby denies equal laws.

The landmark case which fixed the tests to be applied, in determining validity under the equal protection clause, substantively considered, is Lindsley v. Natural Carbonic Gas Co. (1911), 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369. The Court there said:

> Because the statute is directed against pumping from wells bored or drilled into the rock, but not against pumping from wells not penetrating the rock, and because it is directed against pumping for the purpose of collecting the gas and vending it apart from the waters, but not against pumping for other purposes, the contention is made that it is arbitrary in its classification, and consequently denies the equal protection of the laws to those whom it affects.

> The rules by which this contention must be tested, * * * are these: 1. The equal protection clause of the 14th Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary. [Citations omitted]

Unfortunately, the allegations of the bill shed but little light upon the classification in question. * * *

> In thus criticizing the bill, we do not mean that its allegations are alone to be considered, for due regard also must be had for what is within the range of common knowledge and what is otherwise plainly subject to judicial notice. [Citations omitted] pp. 78–79, 31 S.Ct. pp. 340–341.

"Reasonable basis" is the test to be applied. Those who assault the regulation of the school board must meet the traditional equal protection test of showing that the regulation is without a reasonable basis. Thus the question whether the regulation in question promotes a useful educational purpose, i. e. whether there is a "reasonable basis" for the regulation permitting the infliction of corporal punishment.

Mr. Justice Holmes once observed that policy determinations, (of which the regulations is one) consists largely in drawing lines and in making classifications. The equal protection clause does not mandate perfect regulations or laws. Problems in the schools are practical problems. Different factual problems necessitate different solutions. If there be differences in fact, those differences may be taken into account by the authorities in fashioning regulations. The Supreme Court has so held. In Metropolis Theatre Co. v. Chicago, 228 U.S. 61, 33 S.Ct. 441, 57 L.Ed. 730, the Court said:

> If [difference] be so universal in the practice of the business, it would seem not unreasonable if it be adopted as the basis of governmental action. If the action of government have such a basis it cannot be declared to be so palpably arbitrary as to be repugnant to the 14th Amendment. This is the test of its validity. * * * It is enough to say that we have tried, so far as that Amendment is concerned, to declare in words, and the cases illustrate by examples, the wide range which legislation has in classifying its

objects. To be able to find fault with a law is not to demonstrate its invalidity. It may seem unjust and oppressive, yet be free from judicial interference. The problems of government are practical ones and may justify, if they do not require, rough accommodations,—illogical, it may be, and unscientific. * * * What is best is not always discernible; the wisdom of any choice may be disputed or condemned. Mere errors of government are not subject to our judicial review. pp. 69–70, 33 S.Ct. p. 443.

Teachers traditionally have had the discretionary power to impose reasonable punishment upon pupils for breaches of rules and regulations. Traditionally also this has included the power to impose corporal punishment commensurate with the gravity of the offense.

School authorities ordinarily have the power to adopt regulations which are reasonable in their application. Teachers are given discretionary authority to enforce their lawful commands and to maintain good order by the infliction of corporal punishment on pupils who violate responsible rules of discipline. Restatement of Torts, Sec. 147.

The legitimate object of chastisement is to inflict punishment by the pain which it causes, as well as the degradation which it implies. It does not follow, therefore, that because pain is produced that a chastisement is either cruel or excessive. 47 Am.Jur. Schools § 175

 The fact that corporal punishment has been inflicted upon pupils who violate school rules and regulations "is within the range of common knowledge" and is "plainly subject to judicial notice." Corporal punishment of pupils by teachers was practiced in the schools long prior to the adoption of the Fourteenth Amendment. It has continued to be practiced since the adoption of the equal protection clause. Neither the briefs of counsel nor the research of the Court has revealed a single reported case wherein such punishment was banned as invading the constitutional right of equal protection of students. The absence of a reported case is not without significance.

Change has been said to be truly the law of life but sometimes the old and the tried and true are worth holding. The schools of this Nation have undoubtedly contributed to giving us tranquility and to making us a more law-abiding people. Uncontrolled and uncontrollable liberty is an enemy to domestic peace. We cannot close our eyes to the fact that some of the country's greatest problems are crimes committed by the youth, too many of school age. School discipline, like parental discipline, is an integral and important part of training our children to be good citizens—to be better citizens. Justice Black, dissenting, in Tinker v. Des Moines School District (1969), 393 U.S. 524, 89 S.Ct. 746, 21 L.Ed.2d 731.

The plaintiffs allege that the regulation of defendant Board abridges their privileges and immunities of federal, not state, citizenship. The pertinent language of the Fourteenth Amendment is: "No state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States." The complaint particularizes no "privileges" or "immunities" of federal citizenship allegedly violated by the regulation. The complaint alleges that the acts of the defendants "in inflicting corporal punishment upon plaintiff and his class abridges the privileges and immunities of the latter to physical integrity, freedom from the intentional imposition of emotional distress, dignity of personality and freedom from arbitrary authority," all allegedly in violation also of 42 U.S.C. §§ 1981 and 1983.

The allegations characterize what are generally known as invasions of the right of privacy. There is no "general constitutional right to privacy." Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. The plaintiffs' conception of privacy bears no

analogy to those spheres of privacy which have won constitutional protection. Their alleged right is not akin to the guarantee against unreasonable searches and seizures enunciated in Mapp v. Ohio (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, nor to the so-called right of husband and wife to be let alone in the determination of family planning which found support in Griswold v. Conn. (1965), 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510. This section of the complaint shows no deprivation of any federal right requisite to an action under 42 U.S.C. § 1983.

■ We find no reported adjudication, and counsel for plaintiffs have shown none, that the privileges and immunities clause of the Fourteenth Amendment immunizes school pupils from emotional distress or loss of personal dignity flowing from the intentional infliction of punishment, corporal or otherwise. Restatement of Torts § 147; 43 A.L.R.2d 471. The privileges and immunities of federal citizenship are not particularized in the Constitution. They have been spelled out by The Congress and the Courts. They are confined to those fundamental privileges and immunities which belong, of right, to citizens of all free governments and which have been enjoyed by citizens of the several states. They embrace the right of an individual to pass with freedom of movement and without discrimination between the states, Hague v. Committee For Industrial Organization, 3 Cir., 101 F.2d 774; the right to vote for federal elective officials, Smith v. Allwright (1944), 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987, and the right peaceably to assemble and discuss national legislation, Hague, supra. The plaintiffs herein do not analogize "physical integrity" or "dignity of personality" to any adjudicated privilege or immunity of federal citizenship.

The Court finds no authority, and counsel for plaintiffs have cited none, which holds that a regulation of a public school board or an act of school administrators conformably to such regulation, which does not conform to progressive educational expertise respecting the imposition of corporal punishment, transgresses the privileges and immunities of federal citizenship guaranteed by the Fourteenth Amendment. And the Court holds that there was no violation of any such privilege or immunity by the imposition of the corporal punishment under the regulation or by the school authorities in the case at hand.

■ The plaintiffs allege that the regulation is "vague and overbroad in its wording" and therefore "has a chilling effect upon the free exercise of expression by plaintiff and his class" in violation of free speech guaranty of the First Amendment, made applicable to the states by the Fourteenth Amendment. In support of their allegation they rely upon Soglin v. Kauffman, CA 7 (1969), 418 F.2d 163; Dombrowski v. Pfister (1965), 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22, and Tinker v. Des Moines School District (1969), 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731.

I find the cases inapplicable. They are to be distinguished. In *Soglin,* supra, the Court said:

We only hold that *expulsion and prolonged suspension* may not be imposed on students by a *university* simply on the basis of allegations of "misconduct" without reference to any preexisting rule which supplies an adequate guide. The possibility of the sweeping application of the standard of "misconduct" to protected activities does not comport with the guarantees of the First and Fourteenth Amendments. The desired end must be more narrowly achieved. [Emphasis supplied]

*Tinker,* supra, involved three public school pupils, ages 13, 15 and 16 respectively, who had been suspended for wearing black armbands, in violation of a school regulation, to protest the Government's policy in Vietnam. The students had not been disruptive. A divided Court held that, in those circumstances,

a prohibition against such expression of opinion, without evidence that the regulation was necessary to avoid substantial interference with school discipline, is not permissible under the Free Speech guaranty of the First Amendment. In *Dombrowski,* supra, the Court held the statutory definition of "subversive organization" in a state Communist Control Law was an overly broad regulation of freedom of speech in violation of the First Amendment.

The Court has read the cases, with divergent holdings, involving school regulations respecting dress, hair length, etc., and the cases involving punishment of prisoners in penal institutions and finds them not relevant to the case at bar. In Ginsberg v. New York (1968), 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195, the Court said; "[E]ven where there is an invasion of protected freedoms 'the power of the state to control the conduct of children reaches beyond the scope of its authority over adults' * * *" It upheld a New York penal statute Penal Law 1909, § 484–h [Penal Law 1965 McKinney's Consol.Laws, c. 40, § 235.20] making it unlawful "knowingly to sell * * * to a minor" under 17 "(a) any picture * * * which depicts nudity * * * and which is harmful to minors" and "(b) any * * * magazine * * * which contains * * * [such pictures] * * * and which, taken as a whole, is harmful to minors." In a concurring opinion Mr. Justice Stewart said:

> I think a State may permissibly determine that, at least in some precisely delineated areas, a child—like someone in a captive audience—is not possessed of that full capacity for individual choice which is the presupposition of First Amendment guarantees. It is only upon such a premise, I should suppose, that a State may deprive children of other rights—the right to marry, for example, or the right to vote—deprivations that would be constitutionally intolerable for adults.

The Court finds that the regulation and the acts taken conformably thereto in the case at hand do not exceed the limits of what is permissible and holds that plaintiffs are not deprived of any right in violation of the First Amendment, made applicable to the states by the Fourteenth Amendment.

 The complaint alleges that the acts of the defendants, "in inflicting corporal punishment upon plaintiff and his class constitutes the imposition of cruel and unusual punishment upon the latter." The Eighth Amendment proscribes the infliction of "cruel and unusual punishments." The proscription extends to the states under the due process clause of the Fourteenth Amendment. Robinson v. California (1962), 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758. "[T]he members of the School Board * * * are local officials; from the point of view of the Fourteenth Amendment, they stand in this litigation as the agents of the State." Cooper v. Aaron (1958), 358 U.S. 1, 16, 78 S.Ct. 1401, 1408, 3 L.Ed.2d 5.

The cases relied upon by the plaintiffs are not persuasive. Jackson v. Bishop (1968), CA 8, 404 F.2d 571, held that the use of leather straps, measuring three and a half to five and a half feet in length, about four inches wide, and one-fourth inch thick on prisoners lying face down in the Arkansas penitentiary constituted cruel and unusual punishment. The case is distinguishable on the facts. Holt v. Sarver (D.C.1970), 309 F.Supp. 362, held that practices and conditions in the Arkansas penitentiary system, including a system whereby trustees ran the prisons and enumerated conditions in open barracks and isolation cells, constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.

The defendants argue that the constitutional prohibition barring cruel and unusual punishments has no application to proceedings construed to be essentially civil rather than criminal. Some state courts have so held. People v. Chapman,

301 Mich. 584, 4 N.W.2d 18; Re Moulton, 96 N.H. 370, 77 A.2d 26. I do not predicate my holding here on such ground. Rather, I find that the complaint negates the assertion that the punishment of Sims was cruel and unusual. Plaintiff Sims received three blows with a paddle on his posterior. The paddling "took place in the hall of the school building." "The physical harm is slight * * * ". Plaintiffs, in their Response to Defendants' Amended Motion To Dismiss say: "The issue is not whether plaintiff Zebediah Sims was cruelly and unusually punished in the particular instance set out in paragraph 7 of the complaint, but rather it is that corporal punishment is, *ipso facto*, cruel and unusual."

"All that is good is not commanded by the Constitution and all that is bad is not forbidden by it," said Mr. Chief Justice Burger, concurring in Palmer v. Thompson, 403 U.S. 217, 91 S.Ct. 1940, 29 L.Ed.2d 438, decided by the Supreme Court on June 14, 1971.

This Court cannot, under the applicable law, and would not if applicable law permitted the exercise of such discretion, substitute its judgment for the judgment of the defendants in the case at hand on what regulations are appropriate to maintain order and insure respect of pupils for school discipline and property. This Court will not act as a super school board to second guess the defendants. If acts violative of reasonable school regulations be not discouraged and punished, those acts can result in the disruption of the schools themselves. If our educational institutions are not allowed to rule themselves, within reasonable bounds, as here, experience has demonstrated that others will rule them to their destruction.

■ Let there be no misunderstanding as to the precise holding herein. The role of a federal court in adjudicating claims that state school regulations violate the constitutional rights of pupils is relatively narrow. I do not hold that any school regulation, however loosely framed, is necessarily valid. I do not hold that school authorities have the authority to require a pupil to lay aside any constitutional right when he enrolls. I do not hold that school authorities may act arbitrarily or capriciously in the formulation or in the enforcement of school regulations. I do hold that the defendants have the power to promulgate and to enforce reasonable regulations governing students in attendance with power to impose responsible nondiscriminatory corporal punishment for breaches thereof without violating any federally protected constitutional rights of pupils.

The Court entertains considerable doubt that there is any basis in law or fact for considering plaintiff Sims and his parents to be representatives and champions for the whole student body enrolled in School District No. 22 of the State of New Mexico, but a ruling on this matter becomes unnecessary in view of the conclusion of the Court that the complaint herein must be dismissed for failure to state a claim on which relief can be granted. Accordingly,

It is ordered, That motion of Harry Joe to intervene be and the same is hereby denied.

The plaintiffs have not been deprived, under color or state law, of any federal rights, constitutional or statutory. That suffices for disposition of the matter at hand. Accordingly,

It is further ordered, That the complaint be and the same is hereby dismissed.