Grafton,
Dec. 5, 1950. } No. 3972.

## IN RE ELMAN B. MOULTON.

*Gordon M. Tiffany*, Attorney General and *Robert A. Jones*, County Solicitor (*Mr. Tiffany* orally), for the State.

*William Maynard* for the defendant.

KENISON, J. Prior to the passage of the sexual psychopath act (Laws 1949, c. 314), the Legislature appointed an interim commission to study the problem. Laws 1947, cc. 301, 310. The commission, after investigation and public hearings, made its report on March 1, 1949. See Report of the Interim Commission to Study the Cause and Prevention of Serious Sex Crimes. The statute as recommended by the commission was substantially followed by the Legislature with only minor changes. The statute in the main follows the one recommended as a "model act" in a Note, The Legal Disposition of the Sexual Psychopath, 96 U. of Pa. L. Rev. 872, 884 (1948). The general question presented in this appeal is the constitutionality of the New Hampshire act.

The policy and purpose of the act is set forth in section 1. "FINDING OF NECESSITY AND PURPOSE. It is hereby declared that the frequency of sex crimes within this state necessitates that appropriate measures be adopted to protect society more adequately from aggressive sexual offenders; that the laws of this state do not provide for the proper disposition of those who commit or have a tendency to commit such crimes and whose actions result from a psychopathic condition; that

society as well as the individual will benefit by a civil commitment which would provide for indeterminate segregation and treatment of such persons; that the necessity in the public interest for the provisions hereinafter enacted is a matter of legislative determination." Section 2 of the act contains the following definition: "DEFINITIONS. I. The term 'sexual psychopath' as used in this act means any person suffering from such conditions of emotional instability or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of his acts, or a combination of any such conditions, as to render such person irresponsible with respect to sexual matters and thereby dangerous to himself or to other persons."

During the defendant's examination by the three medical experts, he voluntarily gave information concerning himself and his activities. No compulsion was used or threatened. The use of such information obtained under those circumstances is not unconstitutional and does not violate the N. H. Const. Part First, *Art.* 15 which prohibits the compulsory use of self-incriminating evidence. *People* v. *Chapman*, 301 Mich. 584; *People* v. *Redlich*, 402 Ill. 270.

Section 5 VI provides that there "shall be no right to a trial by jury" and the Superior Court alone is empowered to "make an order determining whether or not the person proceeded against is a sexual psychopath." Section 5 V. The absence of the right to trial by jury appears in the commitment of insane persons or mentally ill persons (R. L., c 17, ss. 11, 16; Laws 1949, c. 225) as well as the control of neglected and delinquent children. R. L., c. 132; *Petition of Morin*, 95 N. H. 518. It is the general rule that trial by jury is not a constitutional requirement in such special statutory proceedings. 37 Mich. L. Rev. 613, 623. The statutes relating to the care, control and treatment of sexual psychopaths are analogous to insanity proceedings and it cannot be said that it is a common law requirement embedded in the Constitution that trial by jury is a prerequisite of the validity of such acts. Such is the weight of authority. *State ex rel.* v. *Probate Court*, 205 Minn. 545, affirmed 309 U. S. 270; Glueck, Psychiatric Examination of Persons Accused of Crime, 36 Yale L. J. 632.

It is claimed that the discretionary inquiry allowed by section 3 II (1) establishes an invalid and arbitrary classification in that the County Solicitor is the one to determine against whom the proceedings shall be instituted. This contention has been rejected in other jurisdictions. *People* v. *Sims*, 382 Ill. 472; *State ex rel.* v. *Probate Court, supra; People* v. *Chapman*, 301 Mich. 584; Anno. 126 A. L. R.

530. It is true that the Legislature could have devised other means of determining who should originate such discretionary proceedings to determine whether a person was a sexual psychopath but it cannot be said that the means that they chose were so arbitrary and unreasonable as to be unconstitutional. *Chronicle &c. Pub. Co.* v. *Attorney General*, 94 N. H. 148.

In this state the care, treatment and indeterminate commitment of persons who are insane, mentally deranged, emotionally or mentally ill has long been considered a civil rather than a criminal proceeding. "The manifest objects of the statute [R. L., *c.* 17] are to afford a summary mode of protecting society from the violence of insane, dangerous persons, and place them in a situation favorable to their cure." *Merrimack County* v. *Concord*, 39 N. H. 213, 216. Such commitment is not regarded as a sentence or punishment. *State* v. *Johnson, ante,* 4, 6; *In re Kemmerer,* 309 Mich. 313. The act now under attack provides for care, treatment, segregation and rehabilitation and section 1 specifically calls for "a civil commitment." The objectives of the act are remedial, therapeutic and preventive, 36 A. B. A. J. 665 (1950). The act seeks to protect society as well as benefit the person involved within the framework of a special statutory method which is civil rather than criminal and which attempts to cure and prevent rather than punish. 25 Ind. L. J. 186 (1950). We know of no court that has declared the civil adjudication of sex deviates to be unconstitutional and none has been called to our attention. The validity of such statutes has been uniformly sustained. The two most recent cases are *State ex rel. Sweezer* v. *Green* (Mo., 232 S. W. 2d 897, decided Oct. 9, 1950) and *Malone* v. *Overholzer,* (U.S. D.C. 93 F. Supp. 647, decided Oct. 26, 1950). This has not prevented criticism that the reasoning of these cases "is founded in a technical legalism of the most vicious sort." N. J. Commission for the Investigation of the Habitual Sex Offender 16 (Feb. 1, 1950). As a matter of law this criticism is not accepted; as a matter of policy and practical operation of the statute, it will be hereinafter considered. For the reasons already stated the act is not invalid as imposing cruel and unusual punishment or retrospective punishment.

The act is said to be invalid as applied to the defendant because the defendant's commitment is based on activities prior to the passage of the act. Under the mandatory inquiry for certain serious sex felonies (section 3 I), the "statute is prospective in its operation and suspends

criminal trials after an arrest only when the statutory machinery has had its full operation." *State* v. *Desilets, ante,* 245, 246. The discretionary inquiry under which the defendant was committed (section 3 II) is not retrospective merely because it considers the past history of the person involved. The determination in 1950 that he was a sexual psychopath in 1950 is not made retrospective in its operation because the examining board and the court considered his life history prior to the passage of its act. Section 3 I requires a definite crime to be committed after the passage of the act but section 3 II does not. *State ex rel.* v. *Green* (Mo.) *supra.*

So far we have been concerned with the question whether the act is constitutional on its face and as applied to the defendant only in respect to the specific attacks that have been made against the act. So limited we conclude that the act is valid and constitutional. Since the act may involve many questions of liberty and due process, although it does not offend any provision of criminal due process, it is important that it is made crystal clear what we do not decide in this case. We do not pass on the validity of that part of the definition of sexual psychopath (section 2) which pertains to a person suffering from "lack of customary standards of good judgment." This may mean all things to all men and entirely different things to different groups of men. Kinsey & a., Sexual Behavior in the Human Male (1948). Since the defendant was not committed under this part of the definition we need not decide whether it is too indefinite as a standard to be constitutional. Also not involved here is the question whether section 12 II is intended to limit the right of a committed person to question the legality of the commitment by *habeas corpus. Malone* v. *Overholzer,* (U.S.D.C.) *supra.*

Anyone who attempts to understand, without preconceived ideas of his own, the complex problems involved in the prevention and control of sex crimes will find an extensive amount of literature, popular, scientific and legal. Some of it emits more emotion than enlightenment. Some of the legislation was passed hurriedly before the problem could be adequately studied. Mass. Anno. Laws, *c.* 123A; N. J. Laws 1949, Supplement to Title 2, *c.* 192 of Rev. Stat. of N. J.; Massachusetts, Report of Special Commission Investigating the Prevalence of Sex Crimes, Nos. 1169, 2169 (1948); 40 J. Crim. L. 543 (1950); 94 Congressional Record 4887 (1948). While this complaint cannot be made of the New Hampshire act, some significance may be attached to the fact that recent comprehensive surveys of the problem in New Jersey, New York, Massachusetts and California have

recognized the desirability of various changes in the light of existing practice and medical science. See California, Preliminary Report of the Subcommittee on Sex Crimes (March 8, 1950); N. J. Laws 1950, c. 207; 1 Stanford L. Rev. 486; Recommendations and Report on Study of 102 Sex Offenders at Sing Sing Prison (N. Y., March 1950).

It is recognized that the act may be severely applied to minor sex deviation unwisely and could be the subject of abuse. But this is not reason for the judiciary to condemn it in advance. *Minn. ex rel.* v. *Probate Court*, 309 U. S. 270. When and if abuse is shown, the courts will be open to remedy it. There may be a vast gulf between the objectives of the act and its actual operation if adequate facilities and personnel are lacking to effect its objectives. But that question is not before us now.

Slightly less than one-third of the jurisdictions have sexual psychopath laws. Some commentators conclude "the average sex offender is a mild-mannered, much-maligned, and non-dangerous person who *seldom* repeats his offenses and that progression from minor to major sex crimes is rare." Note, 25 Ind. L. J. 186. Others take a dim view of this conclusion. *Cf. State* v. *Long*, 90 N. H. 103; *State* v. *Desilets, ante,* 245. All agree, however, that the sexual offender requires special consideration and that existing legislation could be substantially improved in the light of existing medical and ·scientific knowledge and the actual operation of sexual psychopath statutes. Fed. Probation Quarterly (Sept. 1950). In this state of the record it cannot be said that the Legislature exceeded its police power in passing this legislation. Accordingly the order is

*Exception overruled.*

All concurred.