**MILLER v. OVERHOLSER.**

No. 11339.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 25, 1952.

Decided March 5, 1953.

416

Mr. Charles Effinger Smoot, Washington, D. C., (appointed by the District Court) for appellant.

Mr. William J. Peck, Asst. U. S. Atty., Washington, D. C., with whom Mr. Charles M. Irelan, U. S. Atty., and Messrs. Joseph M. Howard, Robert M. Scott and Emory W. Reisinger, II, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before WILBUR K. MILLER, PRETTYMAN and FAHY, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of Columbia discharging a writ of *habeas corpus*. The case involves the validity and meaning of the so-called Sexual Psychopath Act, approved June 9, 1948.[1] It is a case of first impression in this court.

The statute is too long to quote in full text. An outline of it, however, is necessary to consideration of our present problems. The first two sections of the act are criminal statutes. The first makes the performance of indecent acts with children a felony, and the second relates to sodomy. The next section contains definitions, among them the following:

"(1) The term 'sexual psychopath' means a person, not insane, who by a course of repeated misconduct in sexual matters has evidenced such lack of power to control his sexual impulses as to be dangerous to other persons because he is likely to attack or otherwise inflict injury, loss, pain, or other evil on the objects of his desire."[2]

The act provides for the initiation of proceedings against any person other than the defendant in a criminal proceeding and then provides that, whenever it shall appear to the United States Attorney that a defendant in any criminal proceeding is a sexual psychopath, he may file with the clerk of the court a statement setting forth the facts tending to show that condition. The act provides that a "patient" shall have the right to the assistance of counsel at every stage of the proceeding. It provides that when a statement has been filed, as above described, the court shall appoint two qualified psychiatrists to make a personal examination of the patient and thereafter to file written reports, including conclusions as to whether the patient is a sexual psychopath. The patient is required by the act to answer questions asked by the psychiatrists, under penalty of contempt of court. Counsel have the right to inspect the reports. No such report and no evidence resulting from the examination are admissible against the patient in any proceeding except one under the act to determine whether he is a sexual psychopath.

If one or both of the psychiatrists conclude that the patient is not a sexual psychopath, he is dismissed. Otherwise the court must conduct a hearing. "Upon the evidence introduced at a hearing held for

1. 62 Stat. 347, D.C.Code §§ 22–3501 through 22–3511 (1951).

2. 62 Stat. 347, D.C.Code § 22–3503(1) (1951).

that purpose, the court shall determine whether or not the patient is a sexual psychopath."[3] The patient or the officer filing the statement may demand a jury trial. An appeal lies from the judgment.

If the patient is adjudged a sexual psychopath, he must be committed to Saint Elizabeths Hospital and confined until released in accordance with the act. He is released when the Superintendent of the Hospital finds that he has sufficiently recovered so as not to be dangerous. If the patient is then under criminal charge he is delivered to the court. Any statement filed pursuant to this act in a criminal case stays prosecution of that case until the proceedings under the provisions of the act have been concluded or the patient is discharged.

Appellant in the case at bar was indicted in two counts, one charging indecent liberties with a child and the other sodomy with the same child. The court appointed counsel to represent him, and he has been represented by counsel (not the same throughout) since that date. Shortly after the indictment was returned, the United States Attorney filed a statement in the District Court setting forth facts which, he alleged, made it appear that the defendant was a sexual psychopath. Thereafter the procedure outlined in the statute was followed. Two psychiatrists appointed by the court filed separate reports, and each stated his opinion that the defendant was a sexual psychopath. A hearing was held, and thereafter the court directed that the defendant be confined in Saint Elizabeths Hospital until the Superintendent should find that he had sufficiently recovered so as not to be dangerous to other persons.

Thereafter the defendant filed a petition for a writ of *habeas corpus*. An answer to the petition was filed by the Superintendent of Saint Elizabeths Hospital. A hearing was had, some evidence was stipulated, other evidence was presented, and the court made findings of fact and reached conclusions of law. It ordered that the writ be discharged and the patient remanded to the custody of the Superintendent. This appeal followed.

The constitutionality of legislation of this sort was established by the Supreme Court in State of Minnesota ex rel. Pearson v. Probate Court.[4] Counsel for the appellant urges that there are differences between the local statute and the Minnesota statute there involved. But in the Minnesota case the statute was attacked as being too vague and indefinite, and the Supreme Court adopted a construction of the statute made by the Minnesota court. The statute thus construed was held valid. The draftsmen of our local act wrote into it not the terms of the Minnesota statute but the interpretation of it which the Supreme Court had approved.[5]

Counsel for appellant attacks the statute and the proceedings at many points. Some of them, grouped, are met by general principles. He makes several attacks from the viewpoint that the proceeding under the statute to determine whether a defendant in a pending criminal action is a sexual psychopath is a criminal proceeding. These contentions relate to presence of counsel at certain stages, the need for an indictment, compulsory cooperation with the psychiatrists, double jeopardy, and self-incrimination in this proceeding. We agree with those courts, including our own District Court in Malone v. Overholser,[6] which have held proceedings under similar statutes and under this statute to be civil proceedings.[7] They constitute an extension of

---

3. 62 Stat. 319, D.C.Code § 22–3508 (1951).

4. 1940, 309 U.S. 270, 60 S.Ct. 523, 84 L. Ed. 744.

5. The interpretation of the Minnesota statutory definition was stated thus: " * * * the language of § 1 of the act is intended to include those persons who, by an habitual course of misconduct in sexual matters, have evidenced an utter lack of power to control their sexual impulses and who, as a result, are likely to attack or otherwise inflict injury, loss, pain or other evil on the objects of their uncontrolled and uncontrollable desire." Id., 309 U.S. at page 273, 60 S.Ct. 525. This interpretation differs from our local statute in only two immaterial words.

6. 1950, 93 F.Supp. 647.

7. State ex rel. Sweezer v. Green, 1950, 360 Mo. 1249, 232 S.W.2d 897, 24 A.L.R.2d

418

established law which relates to the commitment to hospitals of persons who by reason of inability to control impulses are dangerous to other persons. Counsel attacks procedural aspects of the statute. But the outline we have given of the statute shows that procedural steps for the protection of an alleged sexual psychopath—the rights to counsel, to hearing, to jury trial, to appeal —are meticulously provided.

■ Appellant attacks that provision of the statute which requires the stay of criminal proceedings. He says that it violates the command of the Sixth Amendment to the Constitution. This section of the act[8] specifically requires that, when a statement under the act is filed in a criminal proceeding, that proceeding must be stayed, and if the patient is found to be a sexual psychopath the stay continues until he is discharged from the Hospital, which is in the indefinite future. The Sixth Amendment says: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *." But we do not reach the point because of procedural difficulties. In the first place appellant is not being confined by reason of the delay in his trial on the indictment. He is confined because he has been found to be a sexual psychopath. Therefore this habeas corpus proceeding, which tests only the legality of his present confinement, does not test the legality of the delay in his trial. In the second place, it is established by many cases that a prerequisite to relief from delay in trial is a demand for a trial addressed by the accused to the court in which he is accused.[9] No demand for trial has been made by appellant, so far as the record shows, in the criminal proceeding pending in the District Court. The proper way to try the validity of the statutory stay of a pending criminal proceeding is to move in the criminal court for an immediate trial. Then, if the motion be denied because of the statutory stay, an appeal can be taken from the denial; or a suit in the nature of mandamus could be brought to obtain a trial of the charge in the indictment.

■ At the hearing upon the petition for habeas corpus appellant introduced evidence to show, and his counsel contends here, that he has been and is confined in Ward 6 of Howard Hall at Saint Elizabeths Hospital, which Hall is the place of confinement for the criminal insane, and that he is confined there with many wild and violent insane persons. Petitioner testified without contradiction that he had been assaulted by mentally deranged persons in shackles. He described noisome, unnatural and violent acts by inmates in this Hall. Counsel for appellant asserts that this confinement is in violation of the prohibition of the Constitution against cruel and unusual punishment.[10] We do not reach the constitutional question, because we think this confinement as described by petitioner violates both the terms and the spirit of the statute. In the first place, by the statutory definition, if this man is a sexual psychopath he is not insane. If he is insane he is not subject to any part of the procedure under this statute. In the second place, by the certificates of both the psychiatrists, appellant is not insane. The first psychiatrist certified: "This man is not insane. He is of sound mind and does not display currently, any mental symptoms indicative of a psychosis. He is oriented in all fields and there are no delusions, neither are there any hallucinations." The second certified that "Robert H. Miller is not of unsound mind, and therefore not insane." Both certified that appellant lacks the power to control an impulse to engage in sexual misconduct and either is or may be dangerous to others.

■ Both the intent and the terms of this statute are for the commitment of these persons to a hospital for remedial

340; People v. Redlich, 1949, 402 Ill. 270, 83 N.E.2d 736; In re Moulton, 1950, 96 N.H. 370, 77 A.2d 26; People v. Chapman, 1942, 301 Mich. 584, 4 N.W.2d 18.

8. 62 Stat. 349, D.C.Code § 22–3510 (1951).

9. Fowler v. Hunter, 10 Cir., 1947, 164 F. 2d 668, certiorari denied, 1948, 333 U.S.

868, 68 S.Ct. 785, 92 L.Ed. 1146; Pietch v. United States, 10 Cir., 1940, 110 F.2d 817, 129 A.L.R. 563, certiorari denied, 1940, 310 U.S. 648, 60 S.Ct. 1100, 84 L. Ed. 1414; Collins v. United States, 9 Cir., 1946, 157 F.2d 409.

10. U.S.Const. Amend. VIII.

treatment. They are denominated "patients". They are not confined for violation of law. Sharp distinctions between the sane and the insane must necessarily be made for many purposes and in many fields. No doubt widely different methods of care are appropriate for different types of insane persons, who vary from the hopelessly violent to the curable mildly maladjusted. But, even if among the insane some are confined for treatment only, legal lines between them and the sane are significant. This statute is emphatic about it. And the facts which petitioner asserts depict a place of confinement for the hopeless and the violent, not a place of remedial restriction. Whatever the difficulty of a borderline case, this one is clear, if petitioner's allegations are true. The incarceration of this petitioner in a place maintained for the confinement of the violent, criminal, hopeless insane, instead of in a place designed and operated for the treatment of the mentally ill who are not insane, is not authorized by the statute.

The question then arises as to whether *habeas corpus* is an available remedy for the correction of the situation. We think that it is. It is true that ordinarily *habeas corpus* is a remedy to secure total release from custody, and if the court finds the petition for the writ well founded, ordinarily it orders the release of the petitioner. We are well aware of opinions in which courts have observed that *habeas corpus* is not the correct remedy in situations of this general nature [11] and that the judiciary has no power to direct the operation of institutions which are under executive management. The appellee Superintendent cites a number of cases which he says hold uniformly that *habeas corpus* is not the in-

strument with which to correct evils in institutional administration.[12] Some of these cases do not approach the problem; the others hold that courts will not attempt to control the treatment of prisoners in the place in which they are legally confined, or to control the Attorney General's selection of places of confinement for prisoners committed to his charge, or to determine when a prisoner is ill enough to be removed from a prison to a hospital. All such cases deal with discipline or treatment in the place in which the petitioner is legally confined. Judge Sanborn aptly and accurately summed up the law when he pointed out in one of these cases that "the appellant's petition fails to show that he is a prisoner who legally may not be confined in the Medical Center, or that he is, as a matter of law, entitled to be transferred to some other institution." [13] Except in circumstances so extreme as to transgress constitutional prohibitions, the courts will not interfere with discipline or treatment in a place of legal confinement, and so *habeas corpus* is not an available remedy. The legal validity of confinement in a certain place is a different problem. Moreover those cases deal with persons confined after conviction for crime, a factual situation wholly different from the one before us, which under specific provisions of a statute is hospitalization for treatment of an illness, a civil matter in which no punishment whatever is contemplated or permitted. We also observe that the cases cited dealt with definite terms of confinement, whereas we are here considering an indefinite commitment, justifiable only upon a theory of therapeutic treatment.

We think it has been settled since the decision of the Supreme Court in In re

11. See, e.g., Kemmerer v. Benson, 6 Cir., 1948, 165 F.2d 702, certiorari denied, 1948, 334 U.S. 849, 68 S.Ct. 1500, 92 L. Ed. 1772. But cf. Coffin v. Reichard, infra, and In re Kemmerer, 1944, 309 Mich. 313, 15 N.W.2d 652, certiorari denied, Kemmerer v. Michigan, 1945, 329 U.S. 767, 67 S.Ct. 129, 91 L.Ed. 660.

12. McNally v. Hill, Warden, 1934, 293 U. S. 131, 55 S.Ct. 24, 79 L.Ed. 238; Williams v. Steele, 8 Cir., 1952, 194 F.2d 32; Garcia v. Steele, 8 Cir., 1951, 193

F.2d 276; Taylor v. United States, 9 Cir., 1950, 179 F.2d 640, certiorari denied, 1950, 339 U.S. 988, 70 S.Ct. 1010, 94 L. Ed. 1389; Powell v. Hunter, 10 Cir., 1949, 172 F.2d 330; Snow v. Roche, 9 Cir., 1944, 143 F.2d 718, certiorari denied, 1944, 323 U.S. 788, 65 S.Ct. 311, 89 L.Ed. 629; Sarshik v. Sanford, 5 Cir., 1944, 142 F.2d 676; Platek v. Aderhold, 5 Cir., 1934, 73 F.2d 173.

13. Garcia v. Steele, 8 Cir., 1951, 193 F.2d 276, 279.

Bonner [14] that the writ is available to test the validity not only of the fact of confinement but also of the place of confinement. In that case a person convicted in a federal court was sentenced to imprisonment in a state penitentiary. He claimed that under the statutes he could not be confined in such a penitentiary. The court held habeas corpus to be his correct remedy. It commented, "The court is invested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus," [15] and, therefore, while it ordered that the petitioner be discharged from the custody of the warden, it did so without prejudice to the right of the United States to take measures to have the petitioner legally sentenced. That doctrine was followed by the Court of Appeals for the Eighth Circuit in Bryant v. United States [16] and by the Court of Appeals for the Sixth Circuit in Coffin v. Reichard. [17] In the latter case an appellant confined to a hospital alleged that he was subjected to bodily harm, injuries and indignities from guards and other inmates. The court held that habeas corpus was available to him, even though he was in lawful custody. It said:

"The Government has the absolute right to hold prisoners for offenses against it but it also has the correlative duty to protect them against assault or injury from any quarter while so held. A prisoner is entitled to the writ of habeas corpus when, though lawfully in custody, he is deprived of some right to which he is lawfully entitled even in his confinement, the deprivation of which serves to make his imprisonment more burdensome than the law allows or curtails his liberty to a greater extent than the law permits. Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429."

The court pointed out that the district judge "is not limited to a simple remand or discharge of the prisoner, but he may remand with directions that the prisoner's retained civil rights be respected, or the court may order the prisoner placed in the custody of the Attorney General of the United States for transfer to some other institution." The subject was discussed at length by the Court of Appeals for the Fourth Circuit in Rogers v. Desportes. [18]

■ We think that the doctrine of the Bonner case, supra, applies to our present problem. Appellant's complaint did not arise until after his commitment and so was not available to him upon an appeal from the order of commitment. Mandamus or injunction might also lie, but they would not preclude habeas corpus where illegal detention is involved.

■ Courts have said many times that the availability of the great writ must not be circumscribed by any technical considerations, and the statute directs that the court shall dispose of the petition "as law and justice require." [19] If appellant's allegations and evidence in respect to the conditions of his confinement be true (as to which the trial court made no specific finding of fact), he is illegally confined where he is confined. At the same time it may be that the authorities at the Hospital will deny the allegations of fact, or explain them, or they may since the hearing in the District Court have transferred the appellant to a proper place for treatment. We will, therefore, remand this cause to the District Court with instructions that it make a finding as to the conditions of appellant's confinement, receiving, if necessary, additional pleadings and evidence in that regard; and that, if the finding be substantially in accord with petitioner's allegations and evidence, and if continued confinement is required, the court shall issue an order directing the authorities at Saint Elizabeths Hospital to transfer the appellant to a proper place in that institution for hospital treatment and to make a

---

14. 1894, 151 U.S. 242, 14 S.Ct. 323, 38 L. Ed. 149.

15. Id., 151 U.S. at page 261, 14 S.Ct. 323.

16. 1914, 214 F. 51.

17. 1944, 143 F.2d 443, 155 A.L.R. 143, certiorari denied, 1945, 325 U.S. 887, 65 S.Ct. 1568, 89 L.Ed. 2001.

18. 1920, 268 F. 308.

19. 62 Stat. 965 (1948) 28 U.S.C. § 2243.

showing to that effect within a reasonable time.

Appellant says that the standards for release from the Hospital are so vague as to invalidate the statute. The test provided is not more vague than the corresponding terms in lunacy proceedings, which we have held sufficient,[20] and in any event *habeas corpus* is available to test the Superintendent's refusal to recognize a patient's recovery from his illness.[21] Appellant also makes one or two other contentions which were not noted in the District Court. Since there will be further proceedings in that court we do not consider those points in this proceeding.

The judgment of the District Court is reversed and the case remanded to that court for further proceedings in accord with this opinion.

*Reversed and remanded.*

---

20. Wagner v. White, 1912, 38 App.D.C. 554, 558.

21. Malone v. Overholser, supra. See also Overholser v. Boddie, 1950, 87 U.S.App. D.C. 186, 184 F.2d 240, 21 A.L.R.2d 999.