Merrimack
No. 78-237

LELAND W. HUDSON

v.

GARY MILLER, DIRECTOR

DIVISION OF MENTAL HEALTH

March 7, 1979

142

*James E. Duggan*, of Concord, by brief and orally, for the plaintiff.

*Thomas D. Rath*, attorney general (*David L. Harrigan*, attorney, orally), for the State.

GRIMES, J.   This is a petition for a writ of habeas corpus. RSA 534:3. The plaintiff challenges his original commitment and current incarceration under New Hampshire's old Sexual Psychopath Act, RSA ch. 173 (Laws 1949, ch. 314), *repealed* Laws 1969, 443:2, *superseded* by RSA ch. 173-A, *as amended* (Supp. 1977), alleging that he has been, and is still being, denied his constitutional rights to due process and equal protection of the laws. U.S. CONST. AMEND. XIV; N.H. CONST. pt. I, arts. 1 and 15. We hold that plaintiff's current incarceration constitutes a denial of his right to equal protection of the laws under the State and Federal Constitutions because it allows for indefinite internment without automatic review. *See Gibbs v. Helgemoe*, 116 N.H. 825, 367 A.2d 1041 (1976).

The plaintiff was arrested on November 2, 1966, and charged with enticing a minor child. RSA 579:8, *repealed* Laws 1973, 532:26. He was ordered to undergo an examination pursuant to RSA 173:3 to determine whether he was a "sexual psychopath" as defined by RSA 173:2 I. Future references to the provisions of chapter 173 will omit for brevity's sake citation to its subsequent history of repeal and replacement. On January 20, 1967, a hearing was held before the superior court pursuant to RSA 173:5. The court determined that plaintiff was a sexual psychopath and committed him for an indeterminate period to the director of the division of mental health. From January 1967 until October 1969 plaintiff was an in-patient at the New Hampshire Hospital.

In October 1969, the provisions of RSA 173:11-a were invoked, and plaintiff was transferred to the State prison, presumably upon a determination of the director of the division of mental health that plaintiff had received "the maximum benefit from the psychiatric program." The plaintiff remained in the State prison for thirteen months. He was transferred back to the hospital in November 1970, where he remained until he was paroled in September 1972.

In January 1973, plaintiff was arrested and charged with four counts of simple sexual assault. He was transferred from the local jail to the State hospital on February 14, 1973, for further examination. On May 22, 1973, the Superior Court (*King*, J.) revoked plaintiff's parole, and, based upon the doctors' conclusion that plaintiff would not be amenable to treatment, authorized the hospital authorities to transfer him back to the State prison. Plaintiff remained at the prison until July 29, 1974, when he was again transferred back to the hospital, where he stayed until February 5, 1977, when he escaped. He was arrested on February 6, 1977, and charged with two offenses, escape, RSA 642:6 (Supp. 1977), and sexual assault, RSA 632-A:4 (Supp. 1977), and was incarcerated in the county jail in lieu of bail on both charges. In March 1978, plaintiff pleaded guilty to the escape charge and was sentenced on that charge to not less than one nor more than two years in the State prison, with credit for thirteen months of pretrial detention. Apparently the escape sentence will not begin to run until the expiration of his indeterminate commitment as a sexual psychopath. RSA 642:6 IV (Supp. 1977). Plaintiff is now incarcerated in the State prison. He has never been tried or convicted of any sex-related crimes; the 1977 sexual assault charge, however, is still pending trial in Merrimack County Superior Court.

The plaintiff filed a pro se petition for a writ of habeas corpus in both the supreme and superior courts. RSA 490:4 (Supp. 1977); RSA 534:3. The petition to this court was withdrawn, and a hearing was held in the superior court on April 7, 1978. The court appointed counsel for plaintiff and, noting the presence of important constitutional questions, requested counsel for both parties to submit an agreed statement of facts and issues raised. The statement was reserved and transferred by *Keller*, C.J.

The plaintiff asserts a history of constitutional deprivations beginning with his original commitment in 1967, under RSA ch. 173, and continuing with his current incarceration at the State prison. We find it unnecessary to address every issue raised, as the requested relief is granted solely on the basis of his current status.

The Sexual Psychopath Act, RSA ch. 173, was enacted in 1949 in response to growing concern "that the frequency of sex crimes within this state necessitates that appropriate measures be adopted to protect society more adequately from aggressive sexual offenders." RSA 173:1. Its intended goal was to protect both society and the sexual offender. *In re Moulton*, 96 N.H. 370, 373, 77 A.2d 26, 28 (1950). In the legislature's words, "society as well as the individual will benefit by a *civil commitment* which would provide for indeterminate segregation and treatment of such persons." RSA 173:1. (Emphasis added.) Like that statute, the current Dangerous Sexual Offender Act, RSA ch. 173-A, includes this dual purpose, although it does not speak in terms of a "civil commitment." RSA 173-A:1. Unlike the older statute, however, the new act requires a "conviction" for a sex-related crime before its provisions are triggered; the older act required only that one be "arrested and charged" with a sex-related crime. *Compare* RSA 173:3 I, *with* RSA 173-A:3 I (Supp. 1977). Thus it is peculiarly true of the Sexual Psychopath Act, the act under which plaintiff was committed, that "commitment is not regarded as a sentence or punishment," but rather as a "civil commitment," and thus of a "remedial, therapeutic and preventive" nature. *In re Moulton*, 96 N.H. at 373, 77 A.2d at 28. *See generally* Annot., 34 A.L.R.3d 652, 661 (1970).

Labelling a proceeding "civil," however, does not foreclose due process and equal protection safeguards. *In re Winship*, 397 U.S. 358, 366 (1970); *Baxstrom v. Herold*, 383 U.S. 107 (1966); *Proctor v. Butler*, 117 N.H. 927, 932, 380 A.2d 673, 676 (1977); *In re Miller*, 98

N.H. 107, 108–09, 95 A.2d 116, 117 (1953). *See also State v. Ray* 63 N.H. 406 (1885). The need for procedural protection is especially acute when a "civil" commitment proceeding is triggered by an initial involvement in the criminal process. We repeat that "[i]nvolvement in the criminal process is an inadequate reason to justify less procedural and substantive protection against indefinite commitment than that generally available to all others." *Gibbs v. Helgemoe*, 116 N.H. 825, 827, 367 A.2d 1041, 1042 (1976), *quoting Jackson v. Indiana*, 406 U.S. 715, 724 (1972). *See generally* Note, *Constitutional Standards for Release of the Civilly Committed and Not Guilty by Reason of Insanity: A Strict Scrutiny Analysis*, 20 Ariz. L. Rev. 233 (1978). In either situation, "civil or criminal, the person is deprived of his liberty, which constitutes a grievous loss." *Gibbs v. Helgemoe*, 116 N.H. at 828, 367 A.2d at 1043, *citing Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *see O'Connor v. Donaldson*, 422 U.S. 563 (1975).

By passage of Laws 1973, 556:1, the legislature limited the validity of involuntary civil commitment orders to a period of not more than two years. RSA 135-B:38. *See also Dolcino v. Clifford*, 114 N.H. 420, 321 A.2d 577 (1974). In 1975, the legislature applied the same two-year limit to the sentencing provisions applicable to the criminally insane. Laws 1975, 388:4, *now* RSA 651:11-a (Supp. 1977). The issue to be decided is whether, on the facts presented, the plaintiff is entitled to similar protection as a matter of constitutional right. We hold that he is.

Plaintiff's confinement in the State prison constitutes the very same sort of deprivation of liberty involved in civil and criminal commitments. *See Gibbs v. Helgemoe*, 116 N.H. at 828, 367 A.2d at 1043. His petition, therefore, deserves the same close look we gave the commitment proceedings involved in *State v. Gregoire*, 118 N.H. 140, 384 A.2d 132 (1978); *Novosel v. Helgemoe*, 118 N.H. 115, 384 A.2d 124 (1978); *Proctor v. Butler*, 117 N.H. 927, 380 A.2d 673 (1977); and *Gibbs v. Helgemoe supra*.

In the *Gibbs* case, this court could find no rational basis upon which to justify the legislature's differing release and recommittal procedures for those criminally insane who are committed to the State hospital versus those who are committed to the State prison. *Gibbs v. Helgemoe*, 116 N.H. at 827, 367 A.2d at 1043; *see* RSA 651:11-a (Supp. 1977). Recognizing that "due process and equal protection requirements [are] applicable to the involuntary commitment and release of

mentally ill persons in general," we extended the protection afforded by the express language of RSA 651:11-a (Supp. 1977) to those criminally insane who are committed to the prison. *Gibbs v. Helgemoe*, 116 N.H. at 827, 367 A.2d at 1043. Similarly, in the present case, we perceive no valid justification for treating one in the plaintiff's position differently from one who is involuntarily committed under RSA ch. 135-B. *Cf. Baxstrom v. Herold*, 383 U.S. 107, 111–12 (1966). Plaintiff has never been convicted of a sex crime. Nor has he been tried on any of the alleged sex offenses that triggered the commitment proceedings under RSA ch. 173. He, in sum, like one civilly committed, was not incarcerated after a finding of criminal guilt, but after a finding of "dangerousness" to himself or society. *Compare* RSA 173:2 *with* RSA 135-B:26. For the purpose of commitment, therefore, plaintiff is similarly situated to one involuntarily committed pursuant to RSA ch. 135-B. *Cf. Jackson v. Indiana*, 406 U.S. 715 (1972).

■ The plaintiff has not been afforded a recommittal hearing within the past two years. We hold that the equal protection clauses of the Federal and New Hampshire Constitutions require that he be released unless he is recommitted pursuant to the same recommittal procedures available to one civilly committed. The State, of course, is free to pursue all available avenues of recommittal. RSA ch. 173, having been repealed by Laws 1969, 443:2, is no longer an available proceeding. The State has thirty days in which to proceed further; otherwise, the plaintiff is to be released. *Novosel v. Helgemoe*, 118 N.H. 115, 384 A.2d 124 (1978).

The plaintiff also seeks a ruling that he cannot now be tried on either the original criminal charges that led to his 1967 commitment or the 1973 charges that led to his recommittal. The State concedes that it is barred from prosecuting plaintiff on the original charges. RSA 173:13. The State also represents that plaintiff will not be further prosecuted on the sexual assault charges of 1973. The ruling sought is therefore unnecessary.

> *Relief requested is granted unless the State elects to bring recommittal proceedings within thirty days from the date of this opinion.*

All concurred.