Port Authority,
No. 5916.

HOWARD W. SIBSON *& a.*

*v.*

STATE.

November 28, 1969.

*Shaines, Madrigan & McEachern (Mr. Robert A. Shaines* orally), for the plaintiffs.

*George S. Pappagianis,* Attorney General, and *William F. Cann,* Deputy Attorney General (*Mr. Cann* orally), for the defendant.

PER CURIAM. Appeal under RSA ch. 541 from orders of the New Hampshire Port Authority (RSA ch. 271-A) made under the provisions of RSA ch. 483-A entitled "Tidal Waters."

Section 1 of that chapter provided in part as follows: "No

person shall excavate, remove, fill or dredge any bank, flat, marsh, or swamp in and adjacent to tidal waters without written notice . . . to the New Hampshire Port Authority." The Authority was to hold a public hearing on the proposal within thirty days and to send by mail, to certain specified persons and agencies, notice of the time and place of the hearing. *S.* 2. The Authority "may deny the petition or may require" certain specified installations or . other protective measures "to prevent subsequent fill runoff back into tidal waters . . . . If the area on which the proposed work is to be done contains shellfish or is necessary to protect marine fisheries and wildlife, the director of the New Hampshire fish and game department may impose such conditions or measures as he may determine necessary to protect such shellfish or marine fisheries and wildlife, and work shall be done subject thereto." *S.* 3. Rehearing on orders of the Authority under the procedure in RSA ch. 541 is provided by section 4.

Plaintiffs, Howard W. and Olivia F. Sibson, own a parcel of land in Rye containing about four acres situated on U. S. Route 1A more or less opposite the entrance to Ragged Neck Park, commonly known as Rye Harbor State Park. They sought permission under RSA ch. 483-A to fill this land, now divided into 11 lots, for the purpose of erecting a home for themselves on one lot and "possibly build homes" on the other 10 lots "and sell them." This parcel is "marshland" and as to the fill required Mr. Sibson "couldn't honestly say whether it was four feet or three feet or what." The Fish and Game Department opposed plaintiffs' request. Its marine biologist testified that there was saline water on the property and that circulation takes place in the area. He further testified that filling of this property would destroy "roughly four acres of nutrient producing grasses and algae which will have a detrimental effect on fisheries in our nearby coastal waters." There was evidence from another marine biologist that this site "is part, not of the salt marsh proper, but of the landward side of the salt meadow, an area of differing conditions and properties from the rest of the productive estuary." He further testified that these areas "do not add to the estuarine ecology."

The Authority denied the Sibson petition for permission to fill their land. After a requested rehearing, in reaffirming its previous decision, the Authority made the following statement:

"It should be understood that this decision is being made primarily by virtue of that portion of New Hampshire laws, chapter 483-A:3, and with specific reference to the enumerated powers of the Director of the New Hampshire Fish and Game Department, which the New Hampshire State Port Authority feels are binding upon it."

RSA ch. 483-A by its terms applies to "any bank, flat, marsh, or swamp in and adjacent to tidal waters." *S.* 1. Tidewaters "are those in which the tide ordinarily ebbs and flows, including the sea, and also bays, rivers, and creeks, so far as they answer this description. A body or stream of water cannot be considered as tidal merely because, under unusual circumstances, the level of the water is affected by the tide, nor is the amount of salt in the water material." 2 Tiffany, Real Property (3d *ed.*), s. 659; *Nudd* v. *Hobbs,* 17 N. H. 524; *Clement* v. *Burns,* 43 N. H. 609, 621; *Concord Manufacturing Co.* v. *Robertson,* 66 N. H. 1, 4, 7; 56 Am. Jur., *Waters, s.* 448. See *Borax Consolidated* v. *Los Angeles,* 296 U. S. 10, 22, 27.

It is well-established law in New Hampshire that, subject to the power of the Federal Government to act to the extent necessary in the interest of interstate or foreign commerce (*State* v. *Zetterberg,* 109 N. H. 126, 129), tidewaters are public waters. As such they are within the power of the Legislature to make such laws as the public good may require. *State* v. *Sunapee Dam Co.,* 70 N. H. 458, 460; *St. Regis Co.* v. *Board,* 92 N. H. 164, 169; *New Hampshire Water Resources Board* v. *Lebanon Sand & Gravel Co.,* 108 N. H. 254. Regulations such as prescribed by RSA ch. 483-A "to prevent . . . fill runoff back into tidal waters" and "to protect . . . marine fisheries and wildlife" (*s.* 3) are in "the public good." *State* v. *Stafford Company,* 99 N. H. 92, 97; *Commissioner of Natural Resources* v. *Volpe & Co.,* 349 Mass. 104; *Colberg, Inc.* v. *California,* 67 Cal. 2d. 408, 416. See *United States* v. *Rands,* 389 U. S. 121.

It follows that the rights of littoral owners on public waters are always subject to the paramount right of the State to control them reasonably in the interests of navigation, fishing and other public purposes. In other words, the rights of these owners are burdened with a servitude in favor of the State which comes into operation when the State properly exercises its power to control, regulate, and utilize such waters. *State* v. *Stafford Company, supra; Colberg, Inc.* v. *California, supra,* 422; *United*

*States* v. *Rands, supra,* 123. It is only if the legislative action is such as to amount to an actual taking of the property rights of these owners that compensation is required. *Commissioner of Natural Resources* v. *Volpe & Co.,* 349 Mass. 104, 107; *Goldblatt* v. *Hempstead,* 369 U. S. 590; *Morris County Land Co.* v. *Parsippany-Troy Hills Tp.,* 40 N. J. 539, 555; *Spiegle* v. *Borough of Beach Haven,* 46 N. J. 479, 490. What is a taking of property for which compensation must be paid and what is a reasonable curtailment of the use and enjoyment of property for which no payment need be made depends on the facts of each particular case. *Stevens* v. *Salisbury,* 240 Md. 556, 565; *Spiegle* v. *Borough of Beach Haven, supra.*

RSA ch. 483-A by its terms regulates designated lands "in and adjacent to tidal waters." *S.* 1. This court held in *State* v. *Downs,* 59 N. H. 320, 321 that "adjacent to," "adjoining," and "contiguous" were synonymous and meant "in contact with." If the terms of this statute were interpreted to mean that the Legislature intended to regulate all marshlands and wetlands no matter how far removed from the sea, the public purpose, if any, to be accomplished in comparison to the restrictions imposed on the property of such owners would make the statute in this respect of doubtful constitutionality. *Michaelson* v. *Silver Beach Improvement Ass'n,* 342 Mass. 251; *Goldblatt* v. *Hempstead,* 369 U. S. 590.

However, a statute will be construed to avoid a conflict with constitutional rights whenever that course is reasonably possible. *Corning Glass Works* v. *Max Dichter Co.,* 102 N. H. 505, 509. Consequently we hold that RSA ch. 483-A was intended by the Legislature to be an exercise of its "dominant servitude" over tidal waters and to apply only to land in or contiguous to tidewaters, that is, to land of littoral owners. *United States* v. *Rands,* 389 U. S. 121, 122; *State* v. *Stafford Company,* 99 N. H. 92. See RSA 482:41-e, ch. 488-A. See also, Mass. Gen. Laws, ch. 130, *s.* 27A, "bordering on coastal waters." We concur in the position taken by the State in its brief and with the contention of the plaintiffs that on the record their property does not fall within the purview of RSA ch. 483-A and that the orders made thereunder by the Port Authority relative to it are null and void for lack of jurisdiction.

RSA 483-A has been amended in several respects by Laws 1969, ch. 387. Additionally, Commissions have been established

to study Tidal Wetlands and Tidal Inlands Wetlands, Laws 1969, ch. 341, ch. 342. However, it is unnecessary for the decision of these cases to review or comment on these changes already made in the statute. Nor is it necessary in view of the result reached to consider the other issues raised by the parties.

*Appeal sustained.*

GRIMES, J., concurred in the result.