Coos
No. 6417

Franklin M. Yoffe v. Special Board, Chapter 387

April 30, 1973

*Sheehan, Phinney, Bass & Green* and *E. Paul Kelly* (*Mr. Kelly* orally) for the plaintiff.

*Warren B. Rudman,* attorney general, and *Donald W. Stever, Jr.,* attorney (*Mr. Stever orally*), for the defendant.

Kenison, C. J. The sole question for decision in this case is whether the superior court has jurisdiction under RSA 483-A:4 (Supp. 1972) to entertain the plaintiff's appeal from a decision of the Special Board and the Governor and Council denying plaintiff's application for a permit to dredge the natural bed of Lake Umbagog in the town of Errol, New Hampshire. Claiming that the right of appeal established by RSA 483-A:4 (Supp. 1972) is unavailable to an applicant seeking to dredge a lake bed, the Special Board filed a motion to dismiss for lack of jurisdiction. The Superior Court (*Perkins,* J.), after hearing argument on this issue, denied the motion and reserved and transferred the question to this court.

Beginning in 1967, the plaintiff, Franklin M. Yoffe, began investigating the feasibility of excavating diatomaceous earth from the natural bed of Lake Umbagog. He first obtained a prospector's license from the department of resources and economic development (DRED) pursuant to RSA 219:19 and subsequently applied for a mining claim under the same statute. The Special Board, established by Laws 1969, 387:6 "for the purpose of carrying out the provisions of law conferring upon the water resources board authority to decide matters relative to resources of the State, including but not limited to excavating, dredging and filling waters of the state," then asserted jurisdiction over Yoffe's proposal to dredge the bottom of the lake. Accordingly, Yoffe filed applications with the Special Board under RSA ch. 483-A (Supp. 1972) and RSA ch. 488-A, and a joint hearing on the proposal was held by DRED and the Special Board on February 11, 1971. On June 25, 1971, the Special Board voted to recommend to the Governor and Council that plaintiff's application be denied, and on June 29, 1971, both the Special Board and DRED notified Yoffe by letter that his respective applications had been denied. Yoffe's petition for a rehearing was denied by DRED and not responded to by the Special Board, and the Governor and Council accepted the Special Board's recommendation and denied the plaintiff's application in October but failed to notify him of their decision. Yoffe then appealed the denial of his application to the superior court, relying upon the appeal provisions of RSA 483-A:4 (Supp. 1972) and claiming that he had been denied a full and fair hearing due to certain of the procedures at the hearing and the Special Board's independent investigation of the matter subsequent thereto. The issue here is whether the plaintiff is entitled to avail himself of the superior court appeal provisions of RSA 483-A:4 (Supp. 1972). *See Hilton v. Special Board,* 111 N.H. 381, 284 A.2d 917 (1971).

This case arises out of the confused interrelationship between the various statutes dealing with dredging and filling activities in the State. *See* RSA 4:40-a to -d; RSA 149:8-a (Supp. 1972); RSA 219:19; RSA 482:41-e (Supp. 1972); RSA 482:41-f to -i; RSA ch. 483-A (Supp. 1972); RSA ch. 488-A; Laws 1969, 387:6; Laws 1971, 329:1; *Hilton v. Special Board*

*supra.* Yoffe relies upon RSA ch. 483-A (Supp. 1972) which provides that "[n]o person shall excavate, remove, fill or dredge any bank, flat, marsh, or swamp in and adjacent to any waters of the state" without giving written notice of his intention to the water resources board (RSA 483-A:1 (Supp. 1972). As mentioned above, Laws 1969, 387:6 transferred to the Special Board the duties of the water resources board under this and the other dredge and fill statutes. The board is directed to hold a public hearing on the dredge or fill proposal (RSA 483-A:2 (Supp. 1972)) and is empowered to deny the petition or require the installation of appropriate protective measures such as bulkheads. RSA 483-A:3 (Supp. 1972). Section 4 of the statute is the appeal provision and adopts the superior court appellate procedure utilized in zoning cases: "Any party to or participating in the action or proceedings before the board may apply for a rehearing and may appeal to the superior court in the county where the land in question is located, under the same procedure as is provided for appeals in RSA 31:74-87, inclusive." RSA 483-A:4 I (Supp. 1972).

RSA ch. 488-A, which the Special Board contends is the applicable statute in this case, provides that "[n]o person . . . shall excavate, remove, or dredge any bank, flat, marsh, swamp, or lake bed . . . except as provided in this chapter." RSA 488-A:1. Section 2 provides that the Governor and Council may grant to a person the right to dredge public waters for just consideration, upon the recommendation of the board and after a public hearing. The plaintiff's theory that RSA 483-A:4 (Supp. 1972) authorizes his appeal to superior court necessarily rests upon the premise that the appeal procedure specified therein was intended to be a general administrative appeal statute applicable to all of the dredge and fill laws. This is apparent because Yoffe's proposal to dredge a lake bed does not fall within the purview of RSA 483-A:1 which covers only filling and dredging "any bank, flat, marsh, or swamp." Since RSA 488-A:1 covers the dredging of identically described areas, to wit, "any bank, flat, marsh, or swamp," but then adds the phrase "or lake bed," we must assume that the omission of lake bed dredging in ch. 483-A was intentional. *See* 2 Sutherland, Statutory Construction §§ 4915 & 5201 (3d ed. 1943).

We do not agree with the plaintiff's assumption that the appellate procedure outlined in RSA 483-A:4 (Supp. 1972) applies outside of ch. 483-A. First, the language of RSA 483-A:4 I (Supp. 1972) on its face refers only to actions or proceedings initiated according to the previous provisions of ch. 483-A: "Any party to or participating in *the* action or proceedings before the board . . . may appeal to the superior court." (Emphasis added). And when the reasons for the enactment of RSA 483-A:4 (Supp. 1972) are considered, it is apparent that the legislature intended to restrict the elaborate zoning appeal procedures to ch. 483-A alone and did not intend that the superior court appeal should be available to a lake bed dredging applicant such as the plaintiff herein. *See Hilton v. Special Board,* 111 N.H. 381, 284 A.2d 917 (1971); *Sibson v. State,* 110 N.H. 8, 259 A.2d 397 (1969); 2 Sutherland, Statutory Construction § 4501 (3d ed. 1943).

In *Hilton v. Special Board supra,* we reviewed the history of RSA ch. 483-A. The original regulation of dredging and filling "any bank, flat, marsh, or swamp in and adjacent to tidal waters" (Laws 1967, 215:1) was amended by the substitution of "any waters" for "tidal waters" in July of 1969. Laws 1969, 387:1; RSA 483-A:1 (Supp. 1972); *Hilton v. Special Board supra.* In November 1969, this court decided *Sibson v. State,* 110 N.H. 8, 11, 259 A.2d 397, 400 (1969), in which the constitutionality of regulating inland wetlands was questioned: "If . . . the Legislature intended to regulate all marshlands and wetlands no matter how far removed from the sea, the public purpose, if any, to be accomplished in comparison to the restrictions imposed on the property of such owners would make the statute in this respect of doubtful constitutionality." The enactment several months later of Laws 1970, ch. 22, amending RSA ch. 483-A in several respects including the addition of the superior court review mechanism in § 4, was an attempt by the legislature to cure whatever constitutional defects may have inhered in the regulation of interior wetlands by RSA ch. 483-A. The *Sibson* decision "interpreted the dredge and fill laws jurisdiction as being wetlands in and immediately abutting public waters and made apparent some restrictions on the extent the State could regulate privately owned wetlands without providing compensation for the owner . . . . The purpose [of Laws 1970, ch. 22] was

to establish the applicability of dredge and fill laws to private lands by conforming to the criteria expressed by the Supreme Court." Report of the Inland Wetland Study Commission Relative to the Inland Wetlands of New Hampshire, p. 3 (January 1, 1971); *see* Note, *Coastal Wetlands in New England,* 52 B.U.L. Rev. 724, 744 n.20 (1972).

The superior court method of appellate review established in RSA 483-A:4 (Supp. 1972) by Laws 1970, 22:3, was thus intended to apply only to the regulation of dredge and fill operations in wetlands of the State, such as are defined in RSA 483-A:1 to include "any bank, flat, marsh, or swamp." The purpose of the superior court review mechanism was to assure the same availability of judicial scrutiny to wetland dredge and fill regulation as exists with respect to zoning regulation, since regulation in either case can potentially reach a degree of restrictiveness which amounts to a taking of private property for which compensation must be paid. N.H. CONST. pt. I, art. 12; *see* RSA 483-A:4 (Supp. 1972); RSA 31:74-87; *Sibson v. State,* 111 N.H. 305, 282 A.2d 664 (1971); *Hilton v. Special Board,* 111 N.H. 381, 284 A.2d 917 (1971). We can see no reason to extend this judicial protection beyond the "privately owned wetlands" situation to the instant case where the plaintiff has merely applied for and been denied a license to exploit natural resources located on a lake bed belonging to the State. *See* Note, *Coastal Wetlands in New England,* 52 B.U.L. Rev. 724, 741-45; *compare* Mass. Gen. Laws ch. 130, § 105 (1972).

The defendant's motion to dismiss for lack of jurisdiction should be granted.

*Exceptions sustained;*
*appeal dismissed.*

All concurred.