Hillsborough
No. 7502
No. 7511
No. 7683

## THE STATE OF NEW HAMPSHIRE

### v.

### PETER J. SMAGULA III
### JOHN T. QUINN
### MICHAEL L. LAWRUK, JR.

August 29, 1977

664

*David H. Souter,* attorney general, and *Richard B. McNamara,* attorney (*Mr. McNamara* orally), for the state.

*Michael R. Chamberlain,* by brief and orally, for defendant Smagula.

*Woodbury & Rowe* (*Mr. David Woodbury* orally), for defendant Quinn.

*Leonard, Prolman, Gall, Shapiro & Jordan* and *William J. Groff* (*Mr. Groff* orally), for defendant Lawruk.

DOUGLAS, J. These appeals present the question whether RSA 169:21, which provides for the certification of cases involving certain juveniles to the superior court for trial, is unconstitutionally vague in that its lack of ascertainable standards deprives juvenile defendants of their rights to due process and equal protection guaranteed by the State and Federal Constitutions. For the reasons which follow below, we hold that RSA 169:21 as interpreted herein is constitutionally valid.

RSA 169:21 provides in relevant part:

> Transfers to Superior Court. All cases . . . in which the offense complained of constitutes a felony or would amount to a felony in the case of an adult, may, after investigation and consideration, before hearing, be certified to the superior court. Cases so certified may be disposed of by the superior court according to the laws of this state relating thereto without any limitations as to sentence or orders required by this chapter. . . .

Out of the 4,510 delinquent children cases before the district and municipal courts last year, 63 were certified and transferred as adults in accordance with section 21. *Sixteenth Report of the Judicial Council of New Hampshire* 83, 97 (1976). The three defendants herein were charged prior to their eighteenth birthdays with the commission of offenses which would have been felonies if committed by adults, and their cases were certified to the superior court pursuant to RSA 169:21. The exceptions of defendant Smagula were reserved and transferred by *Flynn,* J., Quinn by *Perkins,* J. and Lawruk by *Goode,* J. The defendants argue that the application of RSA 169:21 results in a denial of due process and equal protection in that the absence of ascertainable standards in the statute allows arbitrary, capricious or discriminatory decision making and leaves the juvenile without guidelines to enable him

to effectively prepare for the proceedings. The defendants basically rely upon *People v. Fields*, 388 Mich. 66, 199 N.W.2d 217 (1972). Although in *Fields* a Michigan statute similar to RSA 169:21 was held unconstitutionally vague, the continuing authority of this case has been cast into question. *See People v. Peters*, 397 Mich. 360, 244 N.W.2d 898 (1976). *See also Clemons v. State*, 317 N.E.2d 859 (Ind. App. 1974) (and citations therein).

 It is a basic principle of statutory construction that a legislative enactment will be construed to avoid conflict with constitutional rights wherever reasonably possible. *Sibson v. State*, 110 N.H. 8, 259 A.2d 397 (1969); *In re Poulin*, 100 N.H. 458, 129 A.2d 672 (1957); C. Sands, 2A Sutherland Statutory Construction § 45.11 (1972). Although guidelines do not appear in a statute, a reviewing court may, by resort to judicial construction, cure an otherwise unconstitutionally vague provision. *Cox v. New Hampshire*, 312 U.S. 569, 575–77 (1941); *Avard v. Dupuis*, 376 F. Supp. 479 (D.N.H. 1974); *State v. Speck*, 242 N.W.2d 287 (Iowa 1976). In prior decisions we have already defined the legislative purpose sought to be accomplished by the juvenile laws as being "not penal but protective; not that the child shall be punished for breach of law, but that he shall have a better chance to become a worthy citizen." *In re Perham*, 104 N.H. 276, 184 A.2d 449 (1962); *In re Poulin*, 100 N.H. 458, 129 A.2d 672 (1957).

In *Kent v. United States*, 383 U.S. 541 (1966), the United States Supreme Court, considering a District of Columbia juvenile court statute very similar to RSA 169:21, held that the statutory requirement of a "full investigation" entitled the juvenile defendant to a hearing, and notice thereof, legal representation, access by counsel to social records and probation or similar reports considered by the court, and to a statement of reasons for the waiver decision. The Court stated: "We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel." *Id.* at 557.

Although the Supreme Court's decision in *Kent* was statutorily based, the language of the provision considered therein was very close to that of RSA 169:21. Further, the weight of authority now favors the judgment that the principles stated by *Kent* are of constitutional dimensions. *In re Gault*, 387 U.S. 1, 12 (1967); *United States ex rel. Turner v. Rundle*, 438 F.2d 839, 842 (3d Cir. 1971) (and cases cited). The critical importance of the proceedings to

the juvenile defendant has been recognized by the Supreme Court (*Kent,* 383 U.S. at 556), and by authorities in the field:

There is convincing evidence that most juvenile court personnel, and the judges themselves, regard the waiver of jurisdiction as the most severe sanction which may be imposed by the juvenile court. Not only is the juvenile exposed to the probability of severe punishment, but the confidentiality and individuality of the juvenile proceeding is replaced by the publicity and normative concepts of penal law; the child acquires a public arrest record which, even if he is acquitted, will inhibit his rehabilitation because of the opprobrium attached thereto by prospective employers; if convicted as an adult, the child may be detained well past his twenty-first birthday; he may lose certain civil rights and be disqualified for public employment. Schornhorst, *The Waiver of Juvenile Court Jurisdiction: Kent Revisited,* 43 Ind. L.J. 583, 586–87 (1968).

■■ Accordingly, we hold that in the highly important context of a juvenile waiver proceeding, the procedural safeguards specified in *Kent* are henceforth to be applied under RSA 169:21 and N.H. Const. pt. I, art. 15. Thus the juvenile is entitled to notice and a hearing in district or municipal court on the question of waiver, with the assistance of counsel. The counsel must be provided with access to court records and probation reports or other juvenile files on the minor involved. Finally, prior to transfer or indictment, the juvenile must be given a written statement of findings and reasons for making the transfer to superior court. In determining whether to allow the transfer, the superior court shall accept the district court's waiver decision unless upon review of the record it finds the ruling to have been unsupported by the evidence, or erroneous as a matter of law. RSA 169:24 (Supp. 1975); *see Knott v. Langlois,* 102 R.I. 517, 231 A.2d 767 (1967); *Summers v. State,* 248 Ind. 551, 230 N.E.2d 320 (1967); *State v. Gibbs,* 94 Idaho 908, 500 P.2d 209 (1972); *People in Interest of L.V.A.,* 248 N.W.2d 864 (S.D. 1976).

In addition to the aforementioned procedural protections, the Supreme Court recognized in *Kent* that the critical process of waiving jurisdiction was subject to meaningful review. In an appendix to the opinion, the Court set forth general determinative

factors to assist the juvenile court in making its waiver decision, which are as follows:

1. The seriousness of the alleged offense to the community and whether the protection of the community requires waiver.

2. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner.

3. Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted.

4. The prosecutive merit of the complaint, *i.e.*, whether there is evidence upon which a Grand Jury may be expected to return an indictment (to be determined by consultation with the [prosecuting] . . . attorney).

5. The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults who will be charged with a crime. . . .

6. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living.

7. The record and previous history of the juvenile including previous contacts with . . . law enforcement agencies, juvenile courts and other jurisdictions, prior periods of probation to this Court, or prior commitments to juvenile institutions.

8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available to the Juvenile Court.

These or similar guidelines have been approved by authorities in the field and have been adopted by numerous courts. *See, e.g., State v. Yard,* 109 Ariz. 198, 507 P.2d 123 (1973); *Davis v. State,* 297 So. 2d 289 (Fla. 1974); *State v. Speck,* 242 N.W.2d 287 (Iowa 1976) (and cases cited); *People in Interest of L.V.A.,* 248 N.W.2d 864 (S.D. 1976) (and cases cited); Piersma, Ganousis and Kramer, *The Juvenile Court: Current Problems, Legislative Proposals, And A Model Act,* 20 Saint Louis U.L.J. 1, 34–37 (1975).

 Reference to these or similar criteria in making findings of fact, as well as any other relevant factors which may appear under the facts of a given case, will provide guidance in the making of a waiver decision, and will assist juveniles and their counsel in preparing for the hearing and in obtaining meaningful review of the decision. Because of the impact of double jeopardy, the certification hearing is to be purely investigatory and directed solely to the question of transfer. To subject the juvenile to an adjudicatory proceeding, other than one limited to the question of transfer, and then, instead of sentencing, transfer him to an adult trial, amounts to double jeopardy. *Breed v. Jones*, 421 U.S. 519 (1975); *see Jackson v. Justices of Superior Court of Mass.*, 549 F.2d 215 (1st Cir. 1977). Of course, the courts affected by these decisions may use their rulemaking authority to formalize the procedures herein detailed.

 We conclude that RSA 169:21, when read in conjunction with the principles stated herein, is not unconstitutionally vague. Inasmuch as it is not clear from the record in the *Smagula* and *Quinn* cases what standards were utilized by the district courts in determining to waive jurisdiction, the cases are remanded to superior court for remand to district court for reconsideration in view of the principles expressed in this opinion. *See* RSA 169:29-a (Supp. 1975) and *State v. Gomes*, 116 N.H. 591, 364 A.2d 1260 (1976). In the *Lawruk* case, because the superior court made adequate written findings in light of the eight-point *Kent* guidelines, that decision is affirmed as proper under the then accepted de novo practice and custom in RSA 169:21 cases.

This opinion shall not have retroactive application to juvenile cases transferred to superior court prior to the date hereof. *See Jackson v. Justices of Superior Court of Mass.*, 549 F.2d 215 (1st Cir. 1977) and *Stovall v. Denno*, 388 U.S. 293, 297 (1967).

*No. 7502 and No. 7511 are remanded; exceptions overruled in No. 7683.*

All concurred.