Hillsborough
No. 84-178

THE STATE OF NEW HAMPSHIRE

v.

PETER E. GIBBS, JR.

April 11, 1985

348

*Peter W. Mosseau*, acting attorney general (*Steven L. Winer*, attorney, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, J.   The defendant, Peter Gibbs, was a juvenile in October, 1982, when he was arrested in connection with various offenses. In December, 1982, he was certified by the Nashua District Court (*Gormley*, S.J.) for trial as an adult. RSA 169-B:24 (Supp. 1983). In December, 1983, he was tried and convicted in Superior Court (*Pappagianis*, J.) on a charge of armed robbery and was sentenced to the State prison for seven and one-half to fifteen years. In this appeal, he alleges error both at his certification hearing and at trial. We affirm the defendant's conviction.

On the night of October 25, 1982, a Nashua cab driver was robbed by two teenagers. During the course of the robbery, one of the teenagers pointed a gun at the driver and grabbed the cab's rear-view mirror to prevent the driver from seeing his face. The driver testified that he got a "very little glimpse" of the robber.

The driver further testified that when the robbers left the cab, he saw that one of them carried a "strange looking gun" and wore a knit cap and knee-length boots worn outside his pants.

That same night, the driver was shown photographs by the police and identified one of them as resembling the robber. It was not a photograph of the defendant. Later he was shown an array of photographs that included a picture of the defendant, but he failed to make an identification.

The defendant was arrested on October 29, 1982, in connection with various other offenses. The police recovered a knit cap and a sawed-off .22 caliber rifle from the house where he was staying, and they observed him to be wearing knee-length boots outside his pants. The rifle was identified by the cab driver as the gun used in the holdup.

Under police interrogation, the defendant signed a confession, which was later excluded from admission at trial in the superior court on the ground that the defendant had not knowingly and intelligently waived his right to counsel before being questioned. The confession was, however, admitted into evidence at the certification hearing in the district court, prior to the proceedings in the superior court. The hearing judge refused to consider the defendant's motion that the confession be excluded.

The defendant was certified for trial as an adult, and in April, 1983, was arraigned for the cab robbery. In August, 1983, it was discovered that both defense counsel and the prosecuting attorney had received incomplete copies of the police report on the robbery. For the first time, the defense learned that the cab driver had iden-

tified another person's photo as that of the robber, and the prosecutor learned that a fingerprint had been lifted from the cab's rearview mirror. That fingerprint was positively identified as the defendant's.

The photograph identified by the driver had been destroyed when the police revised their book of juvenile photos. The State did, however, produce at trial three photographs of the same person. The jury was informed of both the driver's failure to identify the defendant's photo and his identification of another person's photo as that of the robber.

██ ██ The trial court denied the defendant's motion to dismiss the charges for the State's failure to disclose exculpatory evidence. The defendant challenges both that ruling and the failure of the district court judge to consider his motion at the certification hearing to suppress his confession. We will consider both issues.

> "When evidence in a criminal trial is destroyed, special scrutiny must be undertaken to ascertain whether the defendant's right to due process has been violated. 'A three-pronged examination is in order: first, was the evidence material to the question of guilt or the degree of punishment; second, was the defendant prejudiced by its destruction; and third, was the government acting in good faith when it destroyed the evidence.' "

*State v. Miskolczi,* 123 N.H. 626, 629, 465 A.2d 919, 921 (1983) (quoting *United States v. Picariello,* 568 F.2d 222, 227 (1st Cir. 1978)). Evidence is material to the question of guilt when it "creates a reasonable doubt that did not otherwise exist . . . . If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." *United States v. Agurs,* 427 U.S. 97, 112–13 (1976), *quoted in State v. Breest,* 118 N.H. 416, 420, 387 A.2d 643, 645 (1978).

In this case, the missing photograph was relevant primarily to the issue of the robber's identity. That identity was established beyond a reasonable doubt by the testimony that the robber had grabbed the rear-view mirror, combined with the evidence that the defendant's fingerprint was found on the mirror. If any additional support were needed, it was present in the form of the driver's testimony about the robber's clothing and gun, together with evidence of the clothing and gun found with the defendant.

Although the photograph may have had some relevance to the question of how accurate the cab driver's memory was, that question could have had little bearing on the determination of the defendant's guilt. Any harm caused by the loss of the photograph in this case

was cured by the jury's being told of the driver's misidentification, and the introduction into evidence of the photographs of the misidentified juvenile.

■ We accordingly hold that the photographic evidence was not material to the question of guilt, and its absence from trial did not amount to constitutional error. The trial court properly denied the defendant's motion to dismiss.

The functions of a certification hearing are defined by RSA 169-B:24 (Supp. 1983), which provides in pertinent part:

"Transfer to Superior Court. All [juvenile] cases before the [district] court in which the offense complained of constitutes a felony or would amount to a felony in the case of an adult may be transferred to the superior court prior to hearing under 169-B:16 as provided herein. The court shall conduct a hearing on the question of transfer and shall consider, but not be limited to, the following criteria in determining whether a case should be transferred:

I. The seriousness of the alleged offense to the community and whether the protection of the community requires transfer;

II. The aggressive, violent, premeditated or willful nature of the alleged offense;

III. Whether the alleged offense was committed against persons or property;

IV. The prosecutive merit of the complaint;

V. The desirability of trial and disposition of the entire offense in one court if the minor's associates in the alleged offense were adults who will be charged with a crime;

VI. The sophistication and maturity of the minor;

VII. The minor's prior record and prior contacts with law enforcement agencies; and

VIII. The prospects of adequate protection of the public, and the likelihood of reasonable rehabilitation of the minor through the juvenile court system.

The minor is entitled to the assistance of counsel, who shall have access to said court records, probation reports or other agency reports. If the court orders transfer to superior court, it shall provide a written statement of findings and reasons for such transfer to the minor."

The eight factors set forth in the statute were evidently derived from eight virtually identical factors listed by this court in *State v. Smagula*, 117 N.H. 663, 668, 377 A.2d 608, 611 (1977), which factors

were quoted verbatim from an appendix to the decision of the United States Supreme Court in *Kent v. United States*, 383 U.S. 541, 566–67 (1966).

The defendant focuses on the fourth factor, and argues that an assessment of "prosecutive merit" must involve an evaluation of the likelihood of conviction. He then argues that a proper evaluation could not have been made in this case, where the hearing judge failed to consider the admissibility of the defendant's confession.

The defendant derives these conclusions from an analysis of the juvenile statute, which seeks "[c]onsistent with the protection of the public interest, to remove from a minor committing a delinquency offense the taint of criminality and the penal consequences of criminal behavior . . . ." RSA 169-B:1, II (Supp. 1983). He argues that a certification proceeding that fails to consider the likelihood of conviction may result in cases being transferred to superior court with little chance of conviction, while the juvenile defendant is "deprived of the needed rehabilitative resources of the juvenile court."

In *Smagula*, we adopted the *Kent* Court's definition of prosecutive merit; namely, "whether there is evidence upon which a Grand Jury may be expected to return an indictment . . . ." *Kent*, 383 U.S. at 567, *quoted in Smagula*, 117 N.H. at 668, 377 A.2d at 611. This follows from our repeated characterization of the certification proceeding as investigatory rather than adjudicative. *In re Vernon E.*, 121 N.H. 836, 435 A.2d 833 (1981); *Smagula*, 117 N.H. at 669, 377 A.2d at 611.

■■ We have consequently compared such a hearing to a hearing for the determination of "probable cause." *Vernon E.*, 121 N.H. at 845, 435 A.2d at 838. The two hearings are not alike, however, in that a certification hearing must comply with the procedural safeguards of RSA 169-B:24 (Supp. 1983). Because of the "critical importance of the proceedings to the juvenile defendant," *Smagula*, 117 N.H. at 666–67, 377 A.2d at 610, the hearing judge must give consideration to all eight factors before making a decision to certify. *Vernon E.*, 121 N.H. at 844, 435 A.2d at 837–38. Within this framework, the court "has considerable discretion in balancing the factors . . . ." *Id.*, 435 A.2d at 837.

■ Because the hearing is investigatory, there is no requirement that it "conform with all the requirements of a criminal trial or even of the usual administrative hearing . . . ." *Kent*, 383 U.S. at 562. The interests at stake are sufficiently important, however, to require that the court's findings be based on evidence with some assurance of trustworthiness. *In re D. E. D.*, 101 Wis. 2d 193, 201 n.3, 304

N.W.2d 133, 137 n.3 (Ct. App. 1981); *see also Vernon E.*, 121 N.H. at 844–45, 435 A.2d at 838.

■■ Where the evidence consists solely of confessions or other material the trustworthiness of which may reasonably be questioned, a hearing may be necessary to determine whether the evidence must be excluded from the certification hearing as unreliable. Clearly, if there is no reliable evidence that would support an indictment, the case has no prosecutive merit and a transfer to superior court cannot be justified.

■ On the other hand, if there is sufficient reliable evidence to support an indictment, it would be a pointless exercise for the district court to consider suppressing other evidence which is not essential to a determination of prosecutive merit. *See State v. Stevens*, 121 N.H. 287, 289–90, 428 A.2d 1241, 1243 (1981) (suppression of evidence by district court at probable cause hearing is not binding on superior court at trial).

■ This is a case in point. Like the lost photograph, the confession was rendered immaterial by the fingerprint evidence, which standing alone would compel a finding of prosecutive merit. Even if the first hearing, held before the prosecutor was aware of the fingerprint, had resulted in denial of certification, nothing could have prevented the State from bringing a second petition based on the newly discovered evidence. Any error was accordingly harmless.

*Affirmed.*

All concurred.